**Arnold D. KLEIN, Plaintiff,**

v.

**NEW CASTLE COUNTY et al.,
Defendants.**

**Civ. A. No. 74–1.**

United States District Court,
D. Delaware.

Jan. 31, 1974.

Samuel V. Abramo, E. Leigh Hunt and John G. Abramo of Abramo, Hunt & Abramo, Wilmington, Del., for plaintiff.

Thomas F. Luce, Wilmington, Del., Atty. for New Castle County, and Joseph M. Bernstein, Asst. Atty. for New Castle County, Wilmington, Del., for defendants.

## OPINION

LATCHUM, Chief Judge.

This Civil Rights action was brought pursuant to 42 U.S.C. § 1983 by a public employee contesting his imminent removal as Treasurer of New Castle County on the ground that his discharge was accomplished in a constitutionally impermissible manner.

■■ At the outset, the Court will dismiss New Castle County as a defendant. A political subdivision of a state is not amenable to suit as a "person" under 42 U.S.C. § 1983 where either monetary damages or equitable relief is sought against it. City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). The Court has jurisdiction over the remaining individual defendants by virtue of 28 U.S.C. § 1343(3) and (4) to enforce federally protected rights under § 1983.

The individual defendants, officers of New Castle County, are Melvin Slawik ("Slawik"), County Executive; Peter M. Ross ("Ross"), Chief Administrative Officer; Paul Seidenstat ("Seidenstat"), Director of Finance; and Carl Russell ("Russell"), Director of the County Complaint Office.

The plaintiff Arnold D. Klein ("Klein") seeks (a) a judgment declaring that the method used to terminate his employment violated the Due Process Clause of the Fourteenth Amendment, (b) an injunction against removing him from the County payroll effective on February 1, 1974, and (c) compensatory and punitive damages in the amount of

$250,000 plus suit costs and attorneys' fees. For the reasons hereinafter set forth, the Court will grant the declaratory and injunctive relief requested and deny the prayers for monetary damages.

At the trial the following facts were developed. Klein has been employed as Treasurer of New Castle County since 1970. In that capacity he headed the Treasury Division of the Department of Finance, which is composed of about 25 employees. The primary function of that Division is the collection of County and school taxes, sewer and other assessments levied for County services. Apparently Klein had performed his job without any major problems until 1973.[1] Klein testified that he first had an inkling of trouble when in March of 1973 budget requests for the Division were cut substantially. Klein had requested $8,000 for equipment purchase, but was only allowed $500. He noted that while the budgets of other divisions of the Finance Department were cut, none was as severe.

In July, Seidenstat, who was Klein's immediate supervisor, called him into his office and told him that Slawik desired his resignation because his performance was unsatisfactory. Klein refused to resign and requested an opportunity to speak to Slawik directly. During Klein's later meeting with Slawik, it was decided that Klein would be placed on loan to the United Fund of Northern Delaware to work on the United Fund Campaign for a two month period. Klein considered this assignment to be a form of "punishment", although Slawik told him it was a "second chance". The assignment received publicity in a Wilmington News-Journal article, which interpreted the assignment as a sign of Slawik's dissatisfaction with Klein.

On October 31, 1973, Klein received a performance review from Seidenstat which, although rating his performance satisfactory, stated that he needed improvement. Klein was also assigned as a member of a Task Force Committee to evaluate the County Finance Department which had been criticized in several independent audits. Among the other participants on the Committee were Seidenstat, Ross and Russell. The Report issued by the Committee was highly critical of the Finance Department.

On Monday, December 10, 1973, Klein was notified to attend a meeting to be held later that morning in Slawik's office. At the meeting, attended by Ross, Russell and Seidenstat, as well as Klein and Slawik, Klein was again asked to resign. Cited as the main reasons for dissatisfaction with Klein's performance were the inability of the Treasury Division to collect past due sewer assessments and Klein's apparent inability to supervise Division personnel. This time, however, Slawik stated that if Klein refused to resign, an attempt would be made to dismiss him through the normal County Merit System procedure. When Klein questioned whether some of the members of County Council favored his resignation, Slawik told him that he had no support among any of the County legislators and there was a substantial likelihood that County Council would abolish the Treasurer's position if Klein failed to resign because they were so dissatisfied with Klein's performance in that office. Slawik and Ross further informed Klein that if he resigned, a neutral recommendation would be placed in his personnel file, whereas if he were successfully removed for cause under the Merit System procedures, his record would necessarily reflect the unfavorable causes of his dismissal. Slawik also told him that if he resigned, he would be entitled to other termination benefits such as accrued vacation and sick pay, which Klein could work out with Bruce Uffelman ("Uffelman"), the Director of the County Personnel Department. Klein's comment to all of these discussions was "I am not being given much of a choice" or "I

1. From 1970 through 1972, Klein had received a rating of "satisfactory" or better on his performance appraisals.

have no choice" or words of similar import. There was then some further discussion that Klein should submit a written resignation later that day and that Seidenstat's Secretary would type it for him. Just before leaving the meeting, Klein asked Slawik whether he should report to the Treasurer's Office the next day. Klein testified that Slawik told him in no uncertain terms that he should remove his personal effects from his office and not report back for work anymore.

Klein cleaned out his desk that afternoon, turned over to Seidenstat his signature stamp and certain documents he had been working on, but he did not submit a written resignation. Klein did not report for work either on Tuesday or Wednesday, December 11th and 12th. Upon advice of counsel, Klein did report for work on Thursday, December 13th and advised Seidenstat that he had not resigned. Seidenstat, after discussing the matter with Uffelman, hand delivered a letter to Klein which stated in part:

> "Based on the meeting held on Monday, December 10, 1973, with the County Executive, Chief Administrative Officer, myself and you, the County Executive has informed me that you have officially resigned in his presence."

He was not permitted to return to his duties as County Treasurer.

On December 17, 1973 Klein consulted with Uffleman, who told him that the County Executive's position was that Klein had resigned.

On January 3, 1974 Klein filed the present action alleging that he was wrongfully dismissed and will be removed from the County payroll on February 1st without having been afforded the essential requisites of procedural due process—notice, reasons and an opportunity to be heard—which are the clear requirements of the Fourteenth Amendment. The defendants' answer

asserts an affirmative defense that Klein voluntarily resigned as County Treasurer. On January 8, 1974 the Court denied Klein's motion for a temporary restraining order to reinstate him as Treasurer on the grounds that Klein had failed to establish a likelihood of success on the merits and had failed to establish irreparable harm. The Court, nevertheless, ordered an expedited discovery schedule and set the case for trial and final hearing on January 25, 1974 so that a decision could be rendered before Klein was removed from the County payroll on February 1, 1974. Because of the strictures of time, the Court renders this opinion without the benefit of a trial transcript.

■■■ Where a public employee has an expectancy of continued employment arising from rules and understandings officially promulgated and fostered, he has a due process right under the Fourteenth Amendment to notice, reasons and a hearing before he can be dismissed from his employment, Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). It is uncontroverted that the office of Treasurer was tenured within the protection of the Merit System enacted by New Castle County. Hence, Klein could not be dismissed without a pre-termination hearing.

The defendants, however, contend that Klein resigned at the December 10th meeting and thereby waived all rights to a pre-termination hearing. Klein maintains that he did not resign at the meeting, or if he did, the resignation was obtained under duress and therefore was of no effect. Consequently, two issues are presented: first, did Klein resign from his position as Treasurer of New Castle County at a meeting in Slawik's office on December 10th, and second, if he did resign then, was the resignation voluntary?[2]

■■■ The burden of proof was upon the defendants to show that Klein re-

---

2. The Court need not and expressly does not make a finding as to the merits of the reasons expressed by the defendants for seeking Klein's dismissal.

signed. As previously stated, a tenured public employee has a right to a pre-termination hearing guaranteed by the Due Process Clause of the Constitution. Perry v. Sindermann, supra; Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Furthermore, waivers of constitutionally protected rights are not lightly implied, Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177 (1937), including the right to a hearing where one is constitutionally guaranteed. Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937). Therefore, the defendants were required to prove that all the elements establishing resignation were met at the December 10th meeting. The Court holds that the defendants have failed to prove by a preponderance of the evidence that Klein resigned at the December 10th meeting, and therefore there is no need to reach the question whether the resignation was voluntary.

■■■ "To constitute a resignation, it must be unconditional and with the intent to operate immediately as such." Poland v. Glover, 111 F.Supp. 675, 676 (W.D.N.Y.1953). In the instant case the evidence fails to establish that Klein unconditionally relinquished his position as Treasurer. After weighing the evidence and the testimony of the witnesses, the Court is convinced that there was a genuine misunderstanding as to what transpired at the December 10th meeting. As stated earlier, Klein said "You don't leave me much choice" or "I have no choice" or some other such statement using the word "choice". Undoubtedly the precise words used by Klein if clearly recalled would shed a great deal of light on his intentions at the meeting. For example, "You don't leave me much choice" implies that Klein realized that he had a weighty decision to make but not necessarily that he was prepared to make that decision then. On the other

hand, "I have no choice" equally implies that Klein was agreeing to resign. Unfortunately, no one present at the meeting could recall the exact words used. The defendants were left with the clear impression that Klein had agreed to resign. That this was not a later fabrication on their part is shown by the fact that Slawik called Uffelman that evening after the meeting to tell him that Klein had resigned, and that Uffelman should meet with Klein to work out the details of the separation benefits that Klein was entitled to upon resigning. The Court is equally convinced that Klein left the meeting with the sincere belief that he had only agreed to consider resigning. The Court reaches this latter conclusion in part based on the testimony of Basil Battaglia ("Battaglia"), who testified that he encountered Klein shortly after the meeting and Klein told him that he had been given the choice of resigning or getting a bad recommendation. Battaglia testified that Klein appeared confused at that time and was still making up his mind as to what he would do.

The only explanation the Court can conceive to reconcile the divergent impressions gained at the meeting is that the defendants were hoping and anticipating that Klein would choose to make a bloodless exit, and being thus predisposed to hear him resign, interpreted an ambivalent statement on his part as an agreement to resign.

The Court believes that the defendants' interpretation of Klein's words, although sincere on their part, was erroneous. Klein impressed the Court as a man incapable of making such a momentous decision without considerable thought, particularly where, as here, by the defendants' own admissions he was not pressed for an immediate decision. In fact, Ross testified that one of Klein's greatest shortcomings in performing his job was his inability to make decisions or give decisive answers. This latter characteristic of Klein's became evident to the Court during the

trial. While testifying, Klein would give a decisive answer to a direct question, but then invariably qualified it in the next breath. Based upon trial testimony and observation of the witnesses, the Court concludes that Klein did not clearly evince an intention to relinquish his office at the December 10th meeting, and whatever words he spoke were of an ambivalent nature.

Russell testified that he remembers Klein answering yes to a question about resigning. The Court accords this testimony little weight. No one else present at the meeting remembered this question and answer. Moreover, Russell, although sure of the answer, was unable to recall the question. He stated that it could have been "Do you resign?" or "Do you agree to resign?" However, based upon the inability to recall precisely exhibited by every attendant at the meeting, the Court concludes that the question posed to Klein could just as easily have been "Would you consider resigning?" Therefore, the Court concludes that this particular question (whatever it was) and answer fail to establish that Klein made a definite commitment at the meeting to resign.

The defendants also point to Klein's clearing out his desk and surrendering his signature stamp and documents to Seidenstat after the meeting as evidence that he intended his statement at the meeting to be a resignation. Such subsequent conduct, of course, is consistent with that thesis. However, his actions are equally consistent with Klein's testimony that he was confused and upset following the events that had just transpired without any advance warning to him and that he was simply following the last order of the County Executive that he had received without considering the implications of his conduct. Thus, the Court cannot conclude that this equivocal conduct was an unambiguous manifestation of Klein's intentions.

The fact that Klein was to submit a written resignation sometime after the meeting also creates a presumption that whatever response he made at the meeting was not intended to be a final statement of his intentions. Both Ross and Slawik testified that the written resignation was only to confirm the fact that Klein had made his resignation effective at the meeting. However, since as previously noted, Klein's statements at the meeting did not clearly evince an intent to resign, the presumption that his remarks were not a final decision on his part remains unrebutted, and the Court concludes that even if Klein did indicate an intention to resign, the later-to-be executed written resignation was to be his effective unambiguous relinquishment of his office. Since no written resignation was ever executed, the defendants have failed to sustain their burden of proving that an effective resignation was ever given.

Since the Court finds that Klein did not resign, he, of course, did not waive his right to a hearing prior to dismissal. Therefore, the Court will enter a judgment declaring that Klein is entitled to notice, reasons and a hearing prior to his dismissal from employment with New Castle County, and will enjoin his scheduled removal from the County payroll unless his dismissal is accomplished in accord with the due process requirements of a pre-termination hearing.[3]

The Court will deny Klein's request for monetary damages. Insofar as damages are sought against the defendants in their official capacities, the suit is in actuality one against New Castle County itself, although not formally named as a party, because recovery will be against the public treasury. Governor of Georgia v. Madrazo, 26 U.S. (1 Pet.) 110, 123–124, 7 L.Ed. 73 (1828); Ex parte Young, 209 U.S. 123, 151, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Hayes

---

3. The Court expresses no opinion whether the office of Treasurer of New Castle County can be abolished by a budget cut.

v. Cape Henlopen School District, 341 F.Supp. 823 (D.Del.1972); Francis v. Davidson, 340 F.Supp. 351 (D.Md.1972) (Three Judge Court), aff'd 409 U.S. 904, 93 S.Ct. 223, 34 L.Ed.2d 168 (1972). Since the County is not a "person" within the meaning of § 1983, City of Kenosha v. Bruno, supra, this Court is without jurisdiction to assess damages under § 1983 against the defendants in their official capacities which are intended to be satisfied out of the public treasury.

■■■■ As far as a personal money judgment against the defendants in their individual capacities is concerned, a public official exercising discretion while performing his duty possesses a qualified privilege precluding individual liability for the performance of official responsibilities if undertaken in good faith. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Hayes v. Cape Henlopen School District, supra. Thus Klein could only recover damages if he sustained his burden in proving that the defendants' actions in seeking his termination without a hearing were undertaken in bad faith. As the Court has previously found, the defendants sincerely believed that Klein had tendered his resignation at the meeting on December 10th. That they were mistaken and that their subsequent attempt to effect his separation without a hearing violated Klein's constitutional rights does not detract from the fact that their actions were undertaken in good faith. Having found that defendants' actions were not taken in bad faith, they are immune from personal liability and Klein's claim for damages against them personally is also barred. Likewise since defendants acted in good faith, Klein's application for attorneys' fees will be denied.

The above shall constitute the findings of fact and conclusions of law required by Rule 52(a), F.R.Civ.P.

An order will be entered in accordance with this opinion.