THE CITY OF FRANKFORT, INDIANA *v.* WELCH R. LOGAN.

[No. 2-874A208. Filed February 10, 1976.]

*Robison, Robison & Miller,* of Frankfort, for appellant.

*M. Morrill Morrison, Morrison, Morrison & Morrison,* of Frankfort, *Frank S. Pryor, Carol Gafton, Pryor & Grafton,* of Frankfort, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—Defendant-Appellant City of Frankfort, Indiana (City), appeals from a trial court judgment rein-- stating the Plaintiff-Appellee Welch R. Logan (Logan) to the "same duty status prevailing at the time of his dismissal" with $16,219.82 in back wages, the City claiming Logan's status was only that of a "special" policeman who could be dismissed without notice of cause.

Reversed.

## FACTS

The facts in this case are stipulated by Logan and the City:

> At all times relevant herein, the City of Frankfort, Indiana was a fourth class city of the State of Indiana, and there also has been at all times herein a constituted Board of Works and Safety of the City of Frankfort, Indiana.
>
> On December 14, 1950, the Plaintiff, Welch R. Logan, applied for an appointment to the Frankfort Police Department of the City of Frankfort, Indiana to fill in for George Harrison, an officer called to the Armed Services. *Welch R. Logan, then over 35 years of age, namely age 42,* (date of birth October 8, 1908) was appointed and became a member of the Frankfort Police Department of the City of Frankfort, Indiana on February 1, 1951. [Emphasis supplied.]
>
> The minutes of the Board of Works and Safety of January 30, 1951, read (in part) as follows:
>
> > "The following appointments were made by the Mayor with the unanimous approval of the Board:
> > "*  *  *
> > "*  *  *

"Welch R. Logan, 601 W. South St., was appointed to the Police Dept. *temporarily,* effective Feb. 1, 1951. (underlined in minutes). Mr. Logan is married, the father of two children, 41 years of age, a former member of the Lexington, Ky. Police Dept. and politically a Republican. Mr. Logan's age prevents him from becoming eligible for the Police Pension Fund regardless of length of service."

The minutes of the regular session of the Common Council of the City of Frankfort, Indiana June 16, 1952, with a quorum present, reads as follows:

"Police Chief Nickols reported that Patrolman Harrison has returned from service and is returning to duty as of July 1, 1952. He asked the Council for permission to retain Patrolman Logan who has been serving during Harrison's absence, and asked the Council to obtain the necessary funds for Logan's salary from the parking meter funds. On Motion of Durrum, seconded by Allen, the Council voted unanimously to retain Logan for the remainder of the current year. Eggers then moved, seconded by Durrum, that Logan also be retained during the year 1953. This motion also passed unanimously.

The Korean conflict Armistice was signed at Panmunjun, Korea on July 27, 1953.

Plaintiff Welch R. Logan served continuously as a police officer of the City of Frankfort from February 1, 1951 to and including the 20th day of June 1968, at which time he was relieved of his badge as a police officer of the City of Frankfort, and other property of the City of Frankfort. The City of Frankfort paid Welch R. Logan as a member of the Frankfort Police Department continuously from February 1, 1951 to June 20, 1968. The City of Frankfort also paid to Welch R. Logan a clothing allowance annually commencing February 1, 1951 until June 1968. During that time the City of Frankfort did not withhold from Logan's Wages for the Police Pension Fund, nor did the City of Frankfort withhold from Logan's wages for Social Security nor did it make payments to Social Security on his behalf. Logan's salary was paid from the parking meter fund of the City of Frankfort. One or more other police officers of the Frankfort Police Department were also paid from this same City of Frankfort fund during these same years.

There was issued to Welch R. Logan by the Frankfort Police Department on May 8, 1956 a "Department of Police Frankfort, Indiana positive identification" of Welch R.

Logan, showing rank as patrolman and Badge No. 15, and stating thereon "this is to certify that the bearer, whose photograph and signature appear on this card is a bonafide member of the Department of Police, Frankfort, Indiana" and signed by Gilbert R. Clidence, Chief of Police.

During the time that Welch R. Logan was a member of the Frankfort Police Department, he was also during at least one of those years President of Lodge #69 Fraternal Order of the Police.

From February 1, 1951 to June 20, 1968 the Chief of Police of the Frankfort Police Department issued orders for Welch R. Logan to carry out police work of the Frankfort Police Department for the City of Frankfort, Indiana. From February 1, 1951 to June 20, 1968 Logan was subject to rules and regulations of the Frankfort Police Department as a policeman.

From February 1, 1951 to June 20, 1968 said Logan made arrests as a member of the Frankfort Police Department, and pursuant to such arrests as made by Welch R. Logan, charges were filed in Court. At the time of said arrests as having been made by Welch R. Logan, he did carry and wear and exhibit a duly authorized Frankfort Police Badge of the City of Frankfort, Indiana, and he did likewise carry a gun and insignia and uniform and other wearing apparel of the Frankfort Police Department of the City of Frankfort, Indiana.

On or about May 14, 1968 plaintiff's attorneys received a letter from the City of Frankfort, a true copy of which is attached to the Amended Appeal and marked Exhibit "A". Welch R. Logan responded by a written request, marked Exhibit "B" and attached to the Amended Appeal.

Welch R. Logan appeared before the Board of Works again on June 5, 1961 and June 19, 1968, and no charges were filed against Logan by the City of Frankfort nor was any evidence presented by the City of Frankfort against Logan for any misconduct whatsoever as an officer. The Board advised Logan that he was not being discharged for cause. The Board advised Logan that his services had to be terminated, taking the position that the City of Frankfort had no authority to retain Logan as a temporary policeman after the Korean Emergency ceased.

Welch R. Logan was notified of his dismissal on June 20, 1968 by a letter a true copy of which is attached to the Amended Appeal as Exhibit "C". Logan stood willing, ready and able, and continued to do so, to continue his duties

as a police officer of the City of Frankfort and so notified the Chief of the Frankfort Police Department by his letter of July 1, 1968, a true copy of which is attached to the Amended Appeal as Exhibit "D". In his last year of employment by the City of Frankfort, Welch R. Logan's annual rate of pay was $5640.

At the time that Welch R. Logan was discharged as a police officer of the City of Frankfort, Indiana by the Board of Public Works and Safety of the City of Frankfort, Indiana on June 20, 1968, the City of Frankfort asserted that such discharge created a vacancy on the Frankfort Police Department and the said City of Frankfort did hire a replacement for said Welch R. Logan, said replacement police officer not having previously been a member of the Frankfort Police Department, and said replacement having been appointed on July 17, 1968 as a police officer of the Frankfort Police Department.

Logan appealed his dismissal by the City to the Clinton Circuit Court on July 16, 1968, claiming that the City's dismissal was "fraudulent, capricious, and illegal" because he was denied due process.

Following oral arguments of counsel upon the Stipulation of Facts and the parties' trial briefs, the trial court took the matter under advisement and on March 13, 1974, entered its judgment reinstating Logan, awarding him back wages of $16,219.82 and finding that Logan functioned as a "regular" policeman and should be treated as such pursuant to IC 1971, 18-1-11-3 (which provided for dismissal of "regular" policemen, for cause and with notice . . . due process).

The City appeals.

## ISSUE[1]

Was Logan properly dismissed by the City?

The City contends that Logan's original status as a "special policeman", at age 42, was legally authorized by IC 1971,

---

1. Because we reverse, it is unnecessary to consider other alleged errors. *Burk* v. *State* (1971), 257 Ind. 407, 275 N.E.2d 1, 4; *Cook* v. *American States Ins. Co.* (1971), 150 Ind. App. 88, 275 N.E.2d 832, 841; *Selner* v. *Fromm* (1969), 145 Ind. App. 378, 251 N.E.2d 127, 131.

18-1-11-5 (Burns Code Ed.), and when the original purpose for Logan's appointment terminated, he was then "dischargeable at will". The City also asserts that Logan's status did not ripen into that of a "regular" member of the Frankfort Police Department because the City did not have the authority to so employ him as his age (42 years) exceeded the maximum statutory age of thirty-five (35) years required for "regular" policemen (IC 1971, 19-1-15-1, Burns Code Ed.).

Logan justifies the court's judgment on the grounds that by "all the facts in the stipulated evidence", he was a "regular" member of the Frankfort Police Department and therefore could be dismissed only for "cause" in accordance with the due process requirements of IC 1971, 18-1-11-3 (Burns Code Ed.).

## DECISION

CONCLUSION—It is our opinion that Logan never attained the status of a "regular" policeman, and therefore was properly dismissed from the Frankfort Police Department by the City.

The salient fact of this appeal is that Logan was over the age of thirty-five years at the time he was appointed "temporarily" to the Frankfort Police force. His appointment could not be as a "regular" member because he was then forty-two years of age. IC 1971, 19-1-15-1 (Burns Code Ed.) unequivocally prohibits appointment of a regular policeman over the age of thirty-five (appointment of "special" police is covered by another section):

> "Age Limit of Police—Reappointment—Requirement—Definition.—No person shall be appointed as a member of the Police Force of any City of the First, Second, Third, Fourth or Fifth Class after he or she has attained his or her thirty-fifth [35th] birthday. . . ." IC 1971, 19-1-15-1 (Burns Code Ed.)

Consequently, at no time during Logan's connection with the City did it have the power or authority to hire or retain

him, i.e., it could not enter into, or ratify or confirm a contract with him to perform services as a regular policeman. To do so would be an *ultra vires* act by the City . . . and therefore void and unenforcible. A passage from 56 Am. Jur. 2d, MUNICIPAL CORPORATIONS, § 503 describes the rule and its rationale:

"The doctrine of ultra vires has, with good reason, been applied with greater strictness to municipal bodies than to private corporations and, in general, *a municipality is not estopped from denying the validity of a contract made by its officers when there has been no authority for making such a contract. Contracts wholly beyond the powers of a municipality are void, and when a contract is made by a municipal corporation which is not warranted by the statutory authority conferred upon it, the governing body of the corporation has at all times the right to declare the contract void and to refuse compliance therewith.* A reason frequently advanced in support of this rule is that since the powers of a municipal corporation depend wholly upon statutory or organic law, every person who deals with such a body is bound to know the extent of its authority and the limitations of its powers. It is generally held that when a contract has been entered into by a municipal corporation with respect to a subject matter which is not within its corporate powers, the corporation cannot be held liable on the contract regardless of whether the other party thereto has fully carried out its part of the agreement. To a like effect, a municipal corporation cannot be held liable in damages by one who entered into a contract with a corporation which was beyond its powers, for the loss he sustained when the performance of the contract was prevented. However an ultra vires contract which has been fully performed by both parties is no longer assailable by either party." (Emphasis supplied.)

*See,* 56 Am. Jur. 2d, MUNICIPAL CORPORATIONS, §§ 503-529;

*Accord,* 63 C.J.S., MUNICIPAL CORPORATIONS, §§ 763, 979, 1007-1010; Annot., 1 A.L.R.2d 338, § 5, 7 (1948).

Indiana is in accord with this rule. In *Hamer* v. *City of Huntington* (1939), 215 Ind. 594, 21 N.E.2d 407, it was

declared that the effect of unauthorized acts by the City of Huntington, being void, "was the same as if the contract had never been made" and therefore was "incapable of being subsequently ratified so as to make it binding. . . . Any party dealing with a municipality is bound to take notice of the limited powers of the municipality and of the laws governing the municipality in making contracts." *Hamer supra,* 215 Ind. at 600-601, 603, 21 N.E.2d at 410.

See,  *Miller* v. *City of Evansville* (1963),
244 Ind. 1, 189 N.E.2d 823 ;

*Eddy Valve Co.* v. *Town of Crown Point* (1906),
166 Ind. 613, 76 N.E. 536 ;

*Gas Light & Coke Co.* v. *City of New Albany* (1901),
156 Ind. 406, 59 N.E. 176 ;

*City of Indianapolis* v. *Wann* (1894),
144 Ind. 175, 42 N.E. 901 ;

*Bd. of Comm'rs of Henry County* v. *Gillies* (1894),
138 Ind. 667, 38 N.E. 40 ;

*Rissing* v. *City of Ft. Wayne* (1893),
137 Ind. 427, 37 N.E. 328 ;

*City of Indianapolis* v. *Ostrom Realty & Construction Co.* (1931),
95 Ind. App. 376, 176 N.E. 246 ;

*City of Indianapolis* v. *Link Realty Co.* (1932),
94 Ind. App. 1, 179 N.E. 574 ;

109 OP. ATT'Y. GEN. 464 (1944)

*Laramore & Douglass, Inc.* v. *City of Anderson, Indiana,*
222 F.2d 480 (7th Cir. 1955) ;

*Greeley* v. *City of Evansville,*
128 F.2d 824 (7th Cir. 1942).

Void is void. No act by the City or by Logan could have transformed this void (not voidable) contract into a valid express or implied contract employing him as a regular policeman.

The only basis advanced for the constitutional proposition that Logan was deprived of due process because he was not dismissed with notice and for cause, is that his status became that of a regular policeman. IC 1971, 18-1-11-3 does specify

that "they [regular policemen and firemen] may be removed for any cause other than politics, after written notice is served . . . notifying him . . . of the time and place of hearing . . .". Unfortunately Logan never attained the status of a regular policeman.

Logan's status as a "special" policeman is another matter. IC 1971, 18-1-11-5 (Burns Code Ed.) allows appointment of "special" policemen under certain conditions without reference to age:

> "Special Duties—Special Fire and Police Officers.—Statutory Commissioners shall have power, on application of any person or corporation, if deemed expedient, to detail regular policemen or firemen, *or appoint and swear any additional number of special policemen,* or firemen, to do special duty at any time within such City, or within the county in which such City is located, upon such person or corporation paying for the use of such duty the same rate per diem of service on such detail or special duty as is paid the regular members of the force; and shall have the power when deemed expedient, to make such special detail without application of any person or corporation or payment of per diem. Such special patrolmen shall be subject to the Chief of Police and such special firemen to the Chief of the Fire Force. They shall obey the rules and regulations of their respective departments and conform to its discipline and orders. . . . Special appointed officers shall during the term of their appointment, possess all the powers, privileges, and duties of regular patrolmen or firemen, but only while regularly employed in and about the premises of their employer and serving in the position for which the employment was made. Auxiliary policemen and firemen directly connected with and created to augment the regular police or fire forces shall wear uniforms the design of which is established by the Board of Public Safety. *Such persons so appointed may be removed at any time by such Commissioners, without notice and without assigning any cause.* The Commissioners may also, on emergency, apprehension of right, tumult, mob or insurrection, pestilence, or invasion, appoint as many special patrolmen as may be desirable, to be paid the same rate per day and possess the same powers, privileges and duties as members of the regular force, and be subject to the same ordinances, regulations and orders. Such Commissioners may also

detail members from the regular forces for the use of any other department of City government." (Emphasis added.) IC 1971, 18-1-11-5 (Burns Code Ed.).

Assuming, without deciding that Logan was a "special" policeman during the entire period of his employment by the City, he was subject to removal at any time without notice and without cause. The plain, unambiguous meaning of 18-1-11-5 is that "special" policemen may "be removed at any time . . ., without notice and without assigning any cause."

Having concluded that Logan's dismissal as a special policeman was authorized by statute, the trial court's judgment reinstating him and awarding him back pay was reversible error.

Judgment is therefore reversed.

Sullivan and White, JJ., concur.

NOTE.—Reported at 341 N.E.2d 510.