TOWN OF SPEEDWAY *v.* MICHAEL D. HARRIS.

[No. 2-574A117. Filed May 10, 1976. Rehearing denied November 17, 1976. Transfer denied March 9, 1977.]

*Henry C. Ryder, Ronald R. Snyder, Roberts, Ryder & Rogers,* of Indianapolis, for appellant.

*Timothy C. Currens, Harris & Currens,* of Mooresville, for appellee.

BUCHANAN, P.J.—Defendant-Appellant Town of Speedway (Speedway), appeals from a trial court judgment reinstating the Plaintiff-Appellee Michael D. Harris (Harris) to the Speedway Fire Department with back wages, claiming that (1) Harris was not entitled to a hearing prior to his dismissal; (2) Harris waived any requirement of a hearing by his refusal to attend a hearing subsequent to his dismissal, and (3) improper award of "full" back wages.

We reverse and remand.

## FACTS

The facts and evidence most favorable to Harris and in support of the trial court's judgment are:

Harris was first employed by the Speedway Fire Department on February 15, 1972, and at that time he was given a copy of the "Rules and Regulations of the Speedway Fire Department" (Rules and Regulations). Although Harris was not directly informed at the commencement of his employment, that he was a "probationary fireman" for the first year of his employment, he was subsequently informed of his status by a fellow fireman in his firehouse.

Harris continued working for the Fire Department until January 16, 1973 (approximately 11 months after being hired), when he was presented with a letter of termination by Fire Chief Sowell (Chief Sowell) . . . no prior hearing having been held. Harris immediately requested, and was given by Chief Sowell, a copy of the charges leading to his termination.

On the same day (date of dismissal), Harris telephoned Robert Hoerger (Hoerger), the President of the Speedway Board of Trustees (the Board) and related to Hoerger that he was not given a hearing *prior* to dismissal, as required by the Rules and Regulations:

## ARTICLE X

### Charges

*Section 1.* A violation of any of these rules or regulations, or a neglect or omission of any of the duties prescribed therein, are considered offenses; and *any member* found guilty *after a hearing* shall, in the discretion of the Board of Town Trustees, be subject to reprimand, suspension from duty, dismissal from the service, or such other penalties as may be determined.

(Emphasis supplied.)

The only reference in the Rules to probationary fireman is contained in Article VII, Section 43 of the Rules:[1]

> *Section 43.* Said personnel shall, after newly appointed firemen have served their probationary period in their respective companies, report to the Fire Chief's Office in writing as to whether or not said fireman has proven capable and efficient. If such probationary fireman is transferred to another company within the probationary period, said personnel shall immediately send a written report to the Fire Chief's Office as to said probationary fireman's conduct and efficiency, stating the time of service and full particulars while under his command. . . .

The next evening Hoerger was in the process of arranging a hearing for Harris. After he had obtained 3 of the 5 Board members' consent for such a special Board meeting, Harris telephoned again and related to Hoerger that he was advised by his attorney "not to take a Hearing, because of the fact that I had already been fired."[2] As a result, no hearing as to the propriety of Harris' dismissal ever occurred.

On February 16, 1973, Harris filed his "Complaint for Appeal, Reinstatement, Back Pay and Damages" in the Superior Court of Marion County alleging that Speedway's action was "arbitrary and capricious" and that he was "illegally discharged from said [Fire] department without having any charges filed aganst him and without the opportunity to have a hearing on said charges". While awaiting the outcome of this action, Harris worked intermittently, earning approximately $2,000.

---

1. The Rules and Regulations make no other reference to probationary firemen other than Article VII, Section 43. Nor are there any separate provisions, regarding discipline, which treat probationary firemen different from regular firemen. Article IX confirms such equal treatment between regular and probationary firemen:

ARTICLE IX
*General Rules*
    *Section 1.* All rules shall apply to *all Members* of the Speedway Fire Department.

2. On page 3 of Harris' Appellees' brief, Harris states that he rejected the proffered meeting "on his attorney's advice that it [the hearing] was too late".

On February 1, 1974, following a non-jury trial, the trial court entered judgment ordering Speedway to reinstate Harris "to said Speedway Fire Department retroactive to January 17, 1973; and that he be paid by the defendant, Town of Speedway, has back pay from January 17, 1973," to the date of judgment.

Speedway appeals.

## ISSUES

Three issues are presented for our disposition:

*ISSUE ONE:* Was Harris entitled to a hearing *prior* to to his dismissal?

*ISSUE TWO:* What was the effect of Harris' refusal of a proffered hearing after he was dismissed?

*ISSUE THREE:* Did the trial court err in reinstating Harris and awarding him "full" back wages?

As to *ISSUE ONE*, Speedway argues that inasmuch as as Harris was a "probationary fireman" he was not entitled to a hearing.

Harris replies that under Article X of the Rules and Regulations, he was entitled to a hearing prior to his dismissal and that it is irrelevant whether or not he was a "probationary fireman".

As to *ISSUE TWO,* Speedway contends that any wrongdoing caused by failure to have a hearing *prior* to dismissal could have been corrected by the *subsequent* hearing proffered by the Speedway Board of Trustees; and that Harris' refusal to attend such a *subsequent* hearing amounted to his waiver of any hearing requirement.

Harris defends his refusal to attend a *subsequent* hearing, because when "a property interest is protected by a statute or rule which requires a hearing prior to the taking of the benefit or interest, due process requires that a prior hearing be granted".[3]

As to *ISSUE THREE*, Speedway submits that the trial court, in awarding "full back pay", made no allowance, in

---

3. Brief for Appellee-Harris at 4.

mitigation, for the $2000 earned by Harris subsequent to his dismissal.

Harris states that although "the injured party is not entitled to be placed in a better position than if he had not been injured", nevertheless he was entitled to "vindictive damages" because he was "knowingly dismissed without due process".

## DECISION

*ISSUE ONE*

*CONCLUSION*—It is our opinion that the Rules and Regulations of the Speedway Fire Department require a hearing *prior* to a fireman's dismissal, regardless of whether Harris was a "probationary" or "regular" fireman.

The "opportunity to be heard"[4] is a fundamental requirement of "due process" under the Fourteenth Amendment. If there is "state action"[5]—and the parties agree there is—the right to be heard "must be granted at a meaningful time and in a meaningful manner," *Armstrong* v. *Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1964) ; *Fuentes* v. *Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), *but only if there* is a Fourteenth Amendment "liberty"[6] or a *"property" interest at stake.*[7]

---

4. Its purpose [the opportunity to be heard], more particularly, is to protect his use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property, . . . So viewed, the prohibition against deprivation of property without due process of law reflects high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference. *See Lynch* v. *Household Finance Corp.*, 405 U.S. 538, 552, 92 S.Ct. 1113, 1122, 31 L.Ed.2d 424. *Fuentes* v. *Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972).

*See,* Rendleman, *TheNew Due Process*, 63 Ky. L.J. 532, 589-593 (1972).

5. *See* Rendleman, *supra* note 4, at 543, 561-576.

6. Deprivation of "liberty" can occur, for example, when a "person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Wisconsin* v. *Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). *See* Note, 48 IND. L.J. 127, 130 (1972).

Due process notice and a prior hearing can provide the person an opportunity to clear his name and consequently prevent the deprivation. *Board of Regents* v. *Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

7. Both "state action" and "property" or "liberty" interests, which are not *de minimus* interests, are necessary prerequisites in order to

*Board of Regents* v. *Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed 2d 548 (1972) ; *Perry* v. *Sindermann,* 408 U.S. 593, 92 S.Ct. 2717, 33 L.Ed.2d 581 (1972) ; Note, 48 IND. L.J. 127 (1972). Because Harris did not allege, nor present any evidence as to any "liberty" interests,[8] our decision is necessarily limited as to whether Harris was deprived of a "property" interest. *Roth, supra,* 92 S.Ct. at 2705, 2706; *State ex rel. Todd* v. *Hatcher,* (1973), 158 Ind. App. 144, 301 N.E.2d 766, 772.

"Property" interests, protected by procedural due process, "extend well beyond ownership of realty, chattels, or money". *Roth, supra,* 92 S.Ct. at 2706. Yet the range of such interests does have boundaries, *Roth, supra,* 92 S.Ct. at 2708, 2709:

The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests—property interests—may take many forms.

Thus the Court has held that a person receiving welfare benefits under statutory and administrative standards defining eligibility for them has an interest in continued receipt of those benefits that is safeguarded by procedural due process. *Goldberg* v. *Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. See *Fleming* v. *Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435. Similarly, in the area of public employment, the Court has held that a public college professor dismissed from an office held under tenure provisions, *Slochower* v. *Board of Education,* 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692, and college professors and staff members dismissed during the terms of their contracts, *Wieman* v. *Updegraff,* 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed 216, have interests in continued employment that are safeguarded by due process. Only last year, the Court held

---

invoke the Fourteenth Amendment's due process requirments. *See* Rendleman, *supra* note 4; Note, 48 IND. L.J. 126 (1972). *See generally Fuentes, supra* note 4.

*But see Lynch* v. *Household Finance Corp.,* 405 U.S. 538, 552, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972) for the position that there are no distinctions between "property" and "liberty" interests. *See generally* Rendleman, *supra* note 4, at 538-539, 543-559.

8. *See,* note 6 *supra. See also, Board of Regents* v. *Roth,* 408 U.S. 564, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972).

that this principle "proscribing summary *dismissal from public employment* without hearing or inquiry required by due process" also applied to a teacher recently hired without tenure or a formal contract, but nonetheless with *a clearly implied promise of continued employment. Connell* v. *Higginbotham,* 403 U.S. 207, 208, 91 S.Ct. 1172, 1173, 29 L.Ed.2d 418.

Certain attributes of "property" interests protected by procedural due process emerge from these decisions. *To have a property interest in a benefit, a person* clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He *must, instead, have a legitimate claim of entitlement to it.* It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

*Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.* Thus, the welfare recipients in Goldberg v. Kelly, *supra,* had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so. (Emphasis supplied.)

Article IX of Speedway's Rules afford "any member" a hearing before being dismissed from service.[9] No distinction between "regular" and "probationary" firemen[10] is made in the Rules for this purpose. Viewing the evidence most favorable to Harris, it can reasonably be inferred that Harris possessed a "legitimate claim

---

9. However, in *City of Frankfort* v. *Logan* (1976), 168 Ind. App. 81, 341 N.E.2d 510, we held that a "special" policeman, under IC 1971, 18-1-11-5 (Burns Code Ed.), could be dismissed without cause and consequently without a hearing, but *no* property interest was conferred upon him by "state action".

10. *See* note 1 *supra.*

of entitlement" to a benefit, i.e., a "property" interest in continued employment as a probationary fireman with the salary attached thereto.

Having determined Harris was entitled to procedural due process because of a cognizable Fourteenth Amendment "property" interest, we must take the next logical step by deciding if procedural due process has been afforded him at a "meaningful time". *Armstrong, supra,* 85 S.Ct. at 1191; *Fuentes, supra,* 92 S.Ct. 1983. In the process of so deciding we are not aided by the Town Government Act of 1969, IC 1971, 18-3-1-1 *et seq.* (Burns Code Ed.), which governs Speedway.

It provides no guidance as to the procedural requirements for disciplining firemen.[11]

Our recourse is solely to Speedway's Rules and Regulations relating to dismissal[12] and they provide for a hearing *prior* to dismissal. So Harris was denied procedural due process at a "meaningful time."

---

11. The Town Government Act provides only the general authority to Town Boards for the organization of fire departments:

The Town Board may organize fire companies, regulate their government, provide all necessary apparatus for the extinguishment of fires; cause owners of buildings to provide ladders and fire extinguishers, which as appurtenances to the real estate shall be exempt from execution, seizure or sale, and upon refusal after notice procure and deliver the same to the owner and in default of payment make recovery by suit before any Justice of the Peace in the proper township, and costs accrued thereby. IC 1971, 18-3-1-36 (Burns Code Ed.).

12. By analogy, IC 1971, 18-1-11-3 (Burns Code Ed.) (which appears to provide guidance for disciplining firemen and policemen for Cities of the First through Fifth Classes, *see,* IC 1971, 18-1-11-1, 2 (Burns Code Ed.)) supports the proposition that Harris was entitled to a hearing prior to his dismissal:

*Disciplining firemen and policemen—Appeals.* Every member of the fire and police forces, including police radio operators and police signal and fire alarm operators, appointed by the mayor, the commissioners of public safety or the board of metropolitan police commissioners, shall hold office until they are removed by said board. *They may be removed for any cause* other than politics, *after written notice* is served upon such member in person or by copy left at his last and usual place of residence notifying him or her of the time and place of hearing, *and after an opportunity for a hearing is given,* if demanded, and the written reasons for such removal shall be

Justice Stewart in *Fuentes* v. *Shevin,* 407 U.S. 67, 92
S.Ct. 1983, 32 L.Ed.2d 556 (1972), elaborated on
the deprivations of one's property interest at a
meaningful time.

If the right to notice and a hearing is to serve its full
purpose, then, it is clear that *it must be granted at a time
when the deprivation can still be prevented. . . .*

\* \* \*

This is no new principle of constitutional law. The right
to a prior hearing has long been recognized by this Court
under the Fourteenth and the Fifth Amendments. Although
the Court has held that due process tolerates variances in
the *form* of a hearing "appropriate to the nature of the
case," [case citations omitted], and "depending upon the
importance of the interests involved and the nature of the
subsequent procedings [if any]," [case citations omitted],
the Court has traditionally insisted that, *whatever its form,
opportunity for that hearing must be provided before* the
deprivation at issues takes effect.[13]

---

entered upon the records of such board. (Our emphasis.) *City
of Evansville* v. *Nelson* (1964), 245 Ind. 430, 199 N.E.2d 703;
*State ex rel. Feltoff* v. *Richards* (1932), 203 Ind. 637, 642, 180 N.E.
596; *Guido* v. *City of Marion* (1972), 151 Ind. App. 435, 440-441, 280
N.E.2d 81; *Lipinski* v. *Town of Chesterton* (1972), 151 Ind. App.
109, 278 N.E.2d 302, 305-306; *Coates* v. *City of Evansville* (1971),
149 Ind. App. 518, 273 N.E.2d 862; *Tryon* v. *City of Terre Haute*
(1963), 136 Ind. App. 125, 132-133, 193 N.E.2d 377; *Mills; Castor* v.
*City of Winchester* (1959), 130 Ind. App. 397, 162 N.E.2d 97; *See,
State ex rel. Todd* v. *Hatcher* (1973), 158 Ind. App. 144, 301 N.E.2d
766, 768-769.
Moreover, IC 1971, 18-1-11-3 makes no distinction between "pro-
bationary" and "regular" firemen. *Morris* v. *City of Evansvi*lle (1972),
152 Ind. App. 50, 281 N.E.2d 910.
13. After determining when "an opportunity to be heard" should
be given so as to be within a "meaningful time", there is the additional
problem of what form it should take, i.e., a hearing in a "meaningful
manner". For a discussion as to the *form* of a procedural due process
hearing, *See, Goss* v. *Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725
(1975); *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.,* 419 U.S. 601,
95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Fuentes* v. *Shevin,* 407 U.S. 67, 92
S.Ct. 1983, 1996, 1997, 1998, n. 18, 1999, n. 21, 32 L.Ed.2d 556; Note, 48
IND. L.J. 126, 131, n. 30 (1972).
*See generally, Rendleman, supra,* note 4, at 593-674 (1975).
While the *form* of due process hearing has been stated as a "weigh-
ing process", *Roth, supra,* note 8, 92 S.Ct. at 2705, "the constitutional
requirement of opportunity for *some* form of hearing before deprivation
of a protected interest, of course, does not depend upon such a narrow
balancing process." 92 S.Ct. at 2706, n. 8.
In accord, the *Fuentes* Court acknowledged that this Court has tra-
ditionally insisted that, whatever its form, opportunity for that hearing

*Fuentes, supra,* 92 S.Ct. at 1994-1995. (Our Emphasis.) *See, Foltz, Van Camp Hdw.* v. *City of Indpls.* (1955), 234 Ind. 656, 684, 130 N.E.2d 650; *Town of Walkerton* v. *N.Y.C. & St.L.R.R.Co.* (1939), 215 Ind. 206, 214, 18 N.E.2d 799; *Falender* v. *Atkins* (1917), 186 Ind. 455, 459-460, 114 N.E. 965; *Gary Teachers U., Loc. No. 4., A.F.T.* v. *School City of Gary* (1975), 165 Ind.App. 314, 332 N.E.2d 256, 261-262; *Smith* v. *Ind. St. Bd. of Health* (1973), 158 Ind.App. 445, 303 N.E.2d 50, 56-57; *Brooks* v. *Ctr. Twp.,* 485 F.2d 383, 385 (7th Cir. 1973); *Davis* v. *Barr,* 373 F.Supp. 740 (E.D. Tenn. 1973); *Klein* v. *New Castle Cty.,* 370 F.Supp. 85 (D. Del. 1974); *Commonwealth of Pa. ex rel. Rafferty* v. *Philadelphia Psych. Ctr.,* 356 F. Supp. 500 (E.D. Pa. 1973).

This "prior hearing" is not absolute, but postponement of notice and an opportunity to be heard is justified only in "extraordinary situations". *Fuentes, supra,* 92 S.Ct. at 1995, 1999; *Boddie* v. *Connecticut,* 401 U.S. 371, 379, 92 S.Ct. 780, 786-787, 28 L.Ed.2d 113 (1971). *See* Rendleman, *supra,* 63 KY. L.J. at 582-589 (1975). These emergency-type situations exist only when some valid governmental interest substantially prevails over the individual's constitutional rights involved.[14] *Fuentes, supra,* 92 S.Ct. at 1995, 1999. Such situations are limited and must be truly unusual. *Id.*

In the present case, Speedway submits that "substantial interests of the public involved and orderly and efficient fire

---

must be provided before the deprivation at issue takes effect. [citations omitted]. . . .

 * * *

While the existence of these other, less effective, safeguards may be among the considerations that affect the form of hearing demanded by due process, they are far from enough by themselves to obviate the right to a prior hearing of some kind. *Fuentes, supra,* 92 S.Ct. at 1995-1996.

*But see Mitchell* v. *W.T. Grant Co.,* 41 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 40 (1974).

14. The *Fuentes* Court discussed "extraordinary situations":

Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified under the particular instance. 92 S.Ct. at 1999-2000.

protection for their families and homes is manifest."[15] However, we find no evidence present in the record, nor does Speedway cite us to any evidence, which would lead to the conclusion that an "extraordinary situation" existed so as to justify Speedway's dismissal of Harris without first giving him an opportunity to be heard on the charges against him.

So, by virtue of the right to a prior hearing bestowed on him by Speedway's Rules and Regulations Harris was deprived of a property interest (his "legitimate claim of entitlement" to continued employment as a fireman) without a prior due process determination of his guilt.[16]

## ISSUE TWO

CONCLUSION—The effect of denying Harris a hearing prior to his dismissal was to deprive him of a property interest, but his refusal to attend the proffered subsequent hearing waived his due process rights and denied the Board the opportunity to minimize Harris' deprivation and prevent potential future damages to the public.

Recognizing that Harris was deprived of a property right without due process, the question arises whether the proposed subsequent hearing could cure this deprivation.

*Fuentes* supplies the answer:

If the right to notice and a hearing is to serve its full

---

15.  Brief for Appellant-Speedway at 23.

16.  Assuming that it could be proved by Speedway that Harris would probably not have any defenses to the alleged charges, such prejudgment does not negate the requirement of providing due process of law prior to the deprivation.

The right to be heard does not depend upon an advance showing that one will surely prevail at the hearing. "To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits." *Coe* v. *Armour Fertilizer Works*, 237 U.S. 413, 424, 35 S.Ct. 625, 629, 59 L.Ed. 1027. *Fuentes, supra,* note 4, 92 S.Ct. at 1997.

purpose, then it is clear that it must be granted at a time when the deprivation can still be prevented. At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first place. *Damages may even be awarded to him for the wrongful deprivation. But no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred. 'This Court has not . . . embraced the general proposition that a wrong may be done if it can be undone.' Stanley v. Illinois,* 405 U.S. 645, 647, 92 S.Ct. 1208, 1210, 31 L.Ed. 2d 551.[17]

92 S.Ct. at 1994-1995. (Our Emphasis.)

*Also See, Armstrong, supra,* 380 U.S. at 550-551, 85 S.Ct. 1187; 2 Am. Jur. 2d. *Administrative Law* § 398, p. 204-205 (1962).

The arbitrary action cannot be undone, but future damage can be avoided. If Harris was innocent of any misconduct, such a subsequent hearing (assuming it passed "due process" muster as to form[18]) might have provided "due process" protection against any future injury to Harris, and at the same time granted whatever relief necessary to compensate Harris for the original wrongful deprivation.

Due process rights are subject to waiver. *D. H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972) ; *Boddie v. Connecticut,* 91 S.Ct. 780, 401 U.S. 371, 378-379, 28 L.Ed.2d 113 (1971). Such a waiver must be "voluntarily, intelligently, and knowingly" made. *Overmyer, supra,* 92 S.Ct. at 783; *Fuentes, supra,* 92 S.Ct. at 2001. *See, Foltz, supra,* 234 Ind. at 285, 130 N.E.2d

---

17. The *Fuentes* Court continued its discussion of deprivations without procedural due process:
  But it is now well settled that a temporary non-final deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment. *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349; *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90. Both *Sniadich* and *Bell* involved takings of property pending a final judgment in an underlying dispute. In both cases, the challenged statutes included recovery provisions, allowing the defendants to post security to quickly regain the property taken from them. Yet the Court firmly held that these were deprivations of property that had to be preceded by a fair hearing. 92 S.Ct. at 1996.
18. *See* note 13 *supra.*

650; 2 AM. JUR. 2D, *Administrative Law*, § 404, p. 212-213 (1962) ; *Klein, supra,* 370 F.Supp. 85; *Gibbs* v. *Tetelman,* 369 F.Supp. 38 (E.D. Pa. 1973).

While Harris could not have waived his right to be heard *prior* to dismissal after the fact, his refusal to accept the Board's proffered hearing waived his "due process" rights for the relief to which he may have been entitled on the merits of the controversy.

He is also in the vulnerable position of seeking equitable relief by way of reinstatement to his former position . . . and is therefore also subject to equitable principles. One great and enduring maxim of equity is "he who seeks equity must do equity." *Sicanoff* v. *Miller* (1960), 131 Ind.App. 535, 167 N.E.2d 481.

So, Harris was under a duty to participate in the subsequent hearing offered him, which would have provided him an opportunity both to be heard on the merits and to minimize his damages while at the same time allowing Speedway an opportunity to prevent any future damages to the public.

ISSUE THREE

CONCLUSION—It is our opinion that Harris is entitled only to such damages as he may have suffered from deprivation of his property interest in continued employment from the date of his dismissal to the date of his refusal of the Board's proffered hearing . . . one day as we read the record.

Having concluded in ISSUE TWO that Harris waived his due process rights to a hearing on the merits and to relief against future deprivations when he refused to participate in the proffered hearing by the Board, it logically follows he is not entitled to reinstatement or any recovery for damages suffered subsequent to the date of this waiver. *See, Fuentes, supra,* 92 S.Ct. at 1994-1995, 1996. *Cf., Davis, supra,* 373 F.Supp. 740; *Brooks, supra,* 485,

F.2d 383; *Jackson* v. *Wheatley Sch. Dist.*, 464 F.2d 411 (3rd Cir. 1972).

Thus we need not reach the question of his duty to mitigate damages after his dismissal by seeking other employment.[19]

The judgment of the trial court is accordingly reversed and remanded with directions to modify its judgment consistent with this opinion.

Reversed and remanded.

Judge White, concurs; Judge Sullivan, concurs with opinion.

## CONCURRING OPINION

SULLIVAN, J.—I concur solely upon the ground that Article X, Section 1 of the Rules and Regulations of the Speedway Fire Department confers upon Harris the right to a hearing. Absent such provisions, I am unable to factually distinguish *City of Frankfort* v. *Logan* (1976), 168 Ind. App. 81, 341 N.E.2d 510, although in the latter case no "due process" argument was considered by this court.

Absent the Rule, I am unconvinced that a *probationary* fireman has such a "legitimate claim of entitlement . . . [to continued employment]" as to constitute a property interest subject to 14th Amendment due process protection. Harris' claim to a right to a hearing is therefore dependent upon the Rule of the Speedway Fire Department rather than upon any independent claim of entitlement to continued employment.

---

19. For discussions of the injured party's responsibility to mitigate damages when a denial of due process has occurred, *See, Town of Highland* v. *Powell* (1976), 168 Ind.App. 123, 341 N.E.2d 804; *City of Lebanon* v. *DeBard* (1941), 110 Ind.App. 79, 37 N.E.2d 718; *Bole* v. *Civil City of Ligonier* (1962), 242 Ind. 627, 181 N.E.2d 236.

*But See, City of Evansville* v. *Maddox* (1939), 217 Ind. 39, 25 N.E.2d 321; *City of Peru* v. *State ex rel. McGuire* (1936), 210 Ind. 668, 199 N.E.2d 151; *Coates* v. *City of Evansville* (1971), 149 Ind.App. 518, 273 N.E.2d 862; *U.S.* v. *Chesterfield City School Dist.*, 484 F.2d 706 (4th Cir. 1973); *Jackson* v. *Wheatley Sch. Dist.*, 464 F.2d 411 (3rd Cir. 1972); *McAleer* v. *McNally Pittsburg Manu. Co.*, 329 F.2d 273 (3rd Cir. 1964); Rendleman, *supra*, note 4 at 606-611.

The Rule affords him a hearing. That is sufficient basis for reversal of the trial court's judgment.

NOTE.—Reported at 346 N.E.2d 646.