Mike AUSTIN, Appellant–Petitioner,

v.

VANDERBURGH COUNTY SHERIFF MERIT COMMISSION and Vanderburgh County Sheriff, Appellees–Respondents.

No. 82A01–0101–CV–37.

Court of Appeals of Indiana.

Jan. 16, 2002.

Charles L. Berger, Berger and Berger, Evansville, IN, Attorney for Appellant.

Jeffrey W. Ahlers, Todd C. Barsumian, Kahn Dees Donovan & Kahn, LLP, Evansville, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Mike Austin appeals a grant of summary judgment in favor of the Vanderburgh County Sheriff Merit Commission and the Vanderburgh County Sheriff (collectively referred to as "Vanderburgh County" unless otherwise noted) in his action against Vanderburgh County for removing him from a Vanderburgh County Sheriff's Department (Sheriff's Department) eligibility list for promotion to the rank of probationary sergeant. Upon appeal, Austin challenges the correctness of that ruling. In the context of that ruling, we address specifically the dispositive question of whether Austin has a protectable property interest in maintaining placement on the promotion-eligibility list in such a way as to trigger constitutional due process protections with respect to removal from the list.

We affirm.

The facts favorable to the nonmoving party are that in the autumn of 1998, promotions for personnel in the Sheriff's Department's were governed by the program referred to as "Standard Operating Procedure" (S.O.P.). The procedures at issue here pertained to promotion to the rank of sergeant. We outline those procedures below.

According to the S.O.P., the Sheriff's Department maintained "full control" of the promotional process. *Appellant's Appendix* at 414. Moreover, the Sheriff was "vested with the ultimate authority and responsibility for administering the promotional process with the approval of the Sheriff's Merit Commission pursuant to IC § 36–8–10–10."[1] *Id.* The S.O.P. set forth

---

1. Ind.Code Ann. § 36–8–10–10 (West Supp. 2000) states:

 Sec. 10. (a) Except for the position of chief deputy, the position of prison matron, and in a county with a population of more than fifty thousand (50,000), temporary administrative ranks or positions established and appointed by the sheriff, the sheriff, with the approval of the board, shall estab-

 lish a classification of ranks, grades, and positions for county police officers in the department. For each rank, grade, and position established, the sheriff, with the approval of the board, shall:
 (1) set reasonable standards of qualifications; and
 (2) fix the prerequisites of:
 (A) training;

the qualifications for eligibility, which in the case of a sergeant included five years of continuous service with the Sheriff's Department, completion of a specified amount of college credits, and participation in a first-line supervisory school or having made application to attend same prior to submitting indication of intent to take the promotional exam. If a candidate met these requirements, he or she would then take a written examination. If the candidate passed the written examination, he or she would submit to two oral examinations, or interviews. One of the interviews would be conducted by the Sheriff's Merit Commission, the other by the Sheriff and Chief Deputy. If the candidate passed both interviews, his or her name would be placed on a promotion eligibility list. A candidate was eligible for promotion for a period of two years after his or her name was placed on the list.

Austin took the written examination on December 5, 1998. In order to pass the test, an applicant must score at least 70%. Austin scored 71%. After obtaining his results, Austin received a letter from the Sheriff's office congratulating him for passing the written exam and informing him that he had advanced to the next stage of the promotion process, which included the interviews. The interviews were scheduled for December 19, 1998. Lieutenant John Strange of the Sheriff's Department assisted the Merit Commission in the promotional process by reviewing the personnel files of the candidates it was going to interview. Prior to the December 19 interview, Lt. Strange reviewed Austin's personnel file and provided the Board with a summary of the file's contents, including hire date, past assignments, current assignment, disciplinary actions, and commendations.

The list of disciplinary actions against Austin was not insubstantial. For instance, on March 13, 1994, Lieutenant D. Ludwig informed Captain M. Craddock in

---

(B) education; and
(C) experience.

(b) The sheriff, with the approval of the board, shall devise and administer examinations designed to test applicants for the qualifications required for the respective ranks, grades, or positions. After these examinations, the sheriff and the board shall jointly prepare a list naming only those applicants who, in the opinion of both the sheriff and the board, best meet the prescribed standards and prerequisites. The sheriff appoints county police officers but only from among the persons whose names appear on this list. All county police officers appointed to the department under this chapter are on probation for a period of one (1) year from the date of appointment.

(c) In a county with a population of more than fifty thousand (50,000), the sheriff may:
(1) establish a temporary administrative rank or position within the county police department; and
(2) appoint a county police officer that has served as a county police officer for at least five (5) years to and remove a county police officer from a temporary administrative rank or position; without the approval of the board. Any temporary administrative rank or position established pursuant to this section shall not diminish or reduce the number and classifications of the existing merit ranks within the county police department. A county police officer appointed under this subsection must have served as a county police officer in the county police department for at least five (5) years before the appointment. A county police officer retains the rank, grade, or position awarded under subsection (b) while serving in a temporary administrative rank or position. This subsection may not be construed to limit, modify, annul, or otherwise affect a collective bargaining agreement.

(d) In a county with a population of more than fifty thousand (50,000), the sheriff, with the approval of the board, shall establish written rules and regulations governing the discipline of county police officers. Rules and regulations established by a sheriff under this subsection must conform to the disciplinary procedure required by section 11 of this chapter.

a letter that he was recommending that Austin be suspended for six days without pay and placed on probation for six months as a result of thirteen disciplinary infractions that had occurred during the preceding twelve months. This recommendation was based upon Lt. Ludwig's conclusion that

> it is apparent that Corporal M. Austin has not responded positively to counseling by his supervisors, nor has any of the disciplinary actions taken against him corrected his continued violations of the departmental rules and regulations. Corporal Austin apparently has difficulty accepting responsibility for his behavior and his excuses or reasoning for failing to follow guidelines seem questionable.

*Appellant's Appendix* at 389. The record also details several other discipline-related suspensions that occurred both before and after those referenced in Lt. Ludwig's letter.

Austin was interviewed by the Merit Commission. Later, pursuant to S.O.P. guidelines, Austin was interviewed by Sheriff-elect Brad Ellsworth and Chief Deputy Steve Woodall. When all of the interviews were completed, the Merit Commission met to discuss the candidates. As a result of that discussion, the Commission sent the following letter to Sheriff Hamner:

> The Merit Board, by and through the votes of three Merit Commissioners, hereby directs you to remove applicant Mike Austin from the Sergeant Eligibility List, based on his lengthy and substantial disciplinary record documenting his inability to competently serve in a such [sic] a command level capacity, including but not limited to the fourteen (14) supervisory interventions and/or disciplinary actions in the last five (5) years.

*Appellant's Appendix* at 425. The letter was signed by all three members who were present during Austin's interview. On January 5, 1999, Chief Deputy Woodall sent a letter to Austin notifying him that he had been removed from the Sergeant's promotional process.

On February 2, 1999, Austin's attorney sent a letter to Tim Klinger, a member of the Merit Commission, advising him as follows:

> I have reviewed in detail the promotional requirements under the standard operating procedure for the Vanderburgh County Sheriff's Department. In reviewing those procedures and the statutes through which those regulations have been adopted, I find no legal basis for the action that was taken by the commission [sic] against Mr. Austin. Mike Austin has met each of the requirements to be placed on the promotional list. Where he is on the list is up to the Commission. We are not questioning the actions of the committee at this time regarding his placement since he has not been placed. The purpose of this letter is to advise you that pursuant to the S.O.P. of the Vanderburgh County Sheriff's Department, you have violated his rights under said procedures and you have removed him without any authority. We hope that you will see that this matter is corrected immediately, so that no further [sic] is necessary to be taken against the Vanderburgh County Sheriff's Department.

*Appellant's Appendix* at 445.

On July 14, 1999, Austin filed a verified complaint against the Sheriff's Department and the Merit Commission alleging that his constitutional due process rights were violated when his name was not placed on the sergeant's promotional list. According to Austin, the failure to place his name on the list violated his due process rights

under article I, section 13 of the Indiana Constitution. On June 9, 2000, the appellees filed a motion for summary judgment, contending that Austin's complaint failed to state a claim upon which relief could be granted. On December 28, 2000, the trial court granted the appellees' motion for summary judgment upon its conclusion that Austin did not have a protectable property interest in having his name placed on the eligibility list.

 Our standard of reviewing a summary judgment ruling is well settled and the same as that employed by the trial court. We confine our review to those materials that were designated to the trial court. *See* T.R. 56(H). Summary judgment is appropriate only when the designated materials demonstrate that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *See* Ind. Trial Rule 56(C); *Butler v. City of Peru,* 733 N.E.2d 912 (Ind.2000). When reviewing the designated materials, we are mindful that all facts and reasonable inferences drawn therefrom are construed in favor of the nonmoving party. *See Butler v. City of Peru,* 733 N.E.2d 912. We carefully review summary judgment rulings to ensure that the parties were not improperly denied their day in court. *Id.*

 In his complaint for damages, Austin identified the theory of liability against Vanderburgh County as follows: Vanderburgh County "illegally and unconstitutionally denied [Austin] a property right and position on the sergeant's list." *Appellant's Appendix* at 20.

 The Fourteenth Amendment of the United States Constitution prohibits any state from depriving a person of life, liberty, or property without due process of law. The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The United States Supreme Court has defined constitutionally protected "property" in this context as "a legitimate claim of entitlement." *Id.* at 577, 92 S.Ct. 2701. The source of such entitlements is not to be found in the Constitution, however. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577, 92 S.Ct. 2701. Thus, a protected property interest generally arises from a statute, ordinance, or contract. *Reed v. Schultz,* 715 N.E.2d 896, 900 (Ind.Ct.App. 1999), *trans. denied.*

 When protected interests are implicated, the right to some kind of prior hearing is paramount. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; *Reed v. Schultz,* 715 N.E.2d 896. Even in cases where a property interest related to continued employment or advancement may arise by express or implied agreement with a governmental entity, federal constitutional law determines whether that interest rises to the level of entitlement protected by the Due Process Clause. *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30(1978). In determining whether due process requirements apply, courts look not to the weight but to the nature of the interest at stake. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548. A court determines whether the interest is within the Fourteenth Amendment's protection of liberty and property. *Id.* "To have a property interest in a benefit [such as a job] a person clearly

must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Speckman v. City of Indianapolis,* 540 N.E.2d 1189, 1193 (Ind.1989) (quoting *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. 2701).

In determining whether Austin had a constitutionally protected property interest in being placed on the sergeant's promotional list, we must examine the statutes, ordinances, and S.O.P. governing the sergeant's promotional list. According to those provisions, members of the department who meet the qualifying conditions must take and pass a written examination. Upon successful completion of that exam, the prospective applicant must then submit to two separate interviews with persons who will be in a decision-making capacity with respect to the sergeant's promotion list. Upon completion of the personal interviews, the interviewers may then opt to place the candidate's name on the promotional list. At that point, the candidate is *eligible* for promotion to sergeant, but actual selection for promotion to sergeant is by no means assured. Even when a person is promoted to the rank of sergeant, the S.O.P. provides that there is a one-year probationary period during which the person could be demoted to his or her previous position without a right to a hearing.

The S.O.P. provides only limited recourse for an individual seeking to challenge a decision with respect to the promotional process. The S.O.P. sets forth the following procedures in that regard:

1. The right of candidates to review and challenge all aspects of the promotion process is an integral part of the process. Candidates should be allowed to review and appeal all scores and evaluations related to their performance in the process to ensure fairness and impartiality.

2. During the administration of the written examination, candidates may appeal specific test items. Appeals must be completed and submitted in writing to the test administrator at the conclusion of the written examination. These appeals will be reviewed and responded to in writing by the Personnel Unit and/or the private testing consultant.

3. Following the publication of the eligibility for promotion list, interested candidates will have the opportunity to review the computation of their scores and the results of their individual written and oral examinations. Candidates must make an appointment with the Personnel Unit Supervisor to review test questions, corrected answer sheet, answer key, and the oral examination rating form.

4. Candidates have the right to challenge any aspect of the promotional process and to have their challenges reviewed by the executive staff. Challenges must be specific and submitted in writing.

5. In reference to reapplication, retesting, and/or reevaluation, no re-examination may be granted. ·

*Appellant's Appendix* at 420(H)(4). Finally, the S.O.P. provides that a candidate's name will remain on the promotional list for a period not to exceed two years, after which they must repeat the process set out above.

A review of the aforementioned procedures convinces us that candidates such as Austin are not "entitled" to placement on the list. We find this court's decision in *Reed v. Schultz,* 715 N.E.2d 896 instructive on this question. In *Reed,* the appellee, Schultz, was an educator whose name had

been placed on a list generated by the Indiana Department of Education, from which the Superintendent selected persons to act as Special Education Hearing Officers. Schultz's name had been on the list for several years, and he had been appointed several times in that span to act as hearing officer. After acting in that capacity in one particular case, Schultz's decision was overturned by the Board of Special Education Appeals (the Board). The Board expressed "concerns" regarding Schultz's handling of that case. *Id.* at 896. The Board's attorney sent a letter to Schultz detailing the nature of those concerns. A copy of the letter was sent to the Superintendent. After reviewing the letter, the Superintendent notified Schultz that his name was being removed from the list of those eligible to serve as hearing officers. In response, Schultz filed a complaint under 42 U.S.C. § 1983 alleging that his right to due process of law had been violated because the Superintendent did not afford him adequate process before removing him from the list of hearing officers. This court reversed the trial court's determination that Schultz had a protected property interest in remaining on the list. Specifically, we held that his interest in remaining on the list of available hearing officers did not rise to the level of a property interest protected by the Fourteenth Amendment's Due Process Clause.

In our analysis, we noted that Schultz's placement on the list did not guarantee that Schultz would be assigned hearings. The same may be said of Austin's placement on the promotional list in the instant case. That is, placement on the list does not automatically entitle Austin to promotion to the rank of sergeant. Neither the applicable statutes nor the course of dealing between the parties in *Reed* guaranteed that the Superintendent would select Schultz to preside over any cases. Instead, Schultz's participation as a hearing officer was left strictly to the Superintendent's discretion. We concluded that, "[w]hen an official action is truly discretionary under local law, 'one's interest in a favorable decision does not rise to the level of a property right entitled to procedural due process protection.'" *Reed v. Schultz*, 715 N.E.2d at 902 (quoting *RR Village Ass'n, Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1202 (2d Cir.1987) (citations omitted)).

In so holding, we noted that the interest claimed by Schultz was the right to remain on a list of persons to be considered for hearing assignments. We distinguished this scenario from those where a protected property interest was found in continued public employment guaranteed by contract or agreement. We also noted that, in this context, the Supreme Court has taken care to limit decisions in which due process rights are implicated to situations involving either employment contracts with tenure provisions or those where a clearly implied promise of continued employment has been made.

Applying the *Reed* analysis in the instant case, we observe that Austin, like Schultz, claimed that his constitutional rights were violated when his name was removed from an employment-related list that may or may not have benefited him in the future with respect to his employment. It is apparent that the single most important factor in the *Reed* court's analysis was the extent to which Schultz's placement on the list was a matter of the Superintendent's discretion. As the *Reed* court phrased it, a property interest would result only if Schultz had "a legitimate claim of entitlement" to placement on the list. Inasmuch as the applicable statutes and rules conferred absolute discretion upon the Superintendent in that regard, Schultz was not "entitled" to placement and therefore a property interest did not arise.

Although the S.O.P. sets forth certain requirements for eligibility to apply for the list, it indicates that actual placement on the list is left to the discretion of the Merit Board. In addition to passing the written exam, an applicant must submit to two oral interviews. After completing those interviews, the candidate's placement on the list depends upon positive recommendations from the interviewers, i.e., the Merit Board and the Sheriff and the Chief Deputies. Clearly, such recommendations are dependent upon the independent personal evaluations of the various individuals involved. The S.O.P. does not specify the nature of the criteria upon which the Merit Board and the Sheriff and the Chief Deputies will base their recommendations. This leads to only one conclusion: those bodies are vested with wide discretion in determining whether to place an applicant's name on the sergeant's promotional list. In that sense, the critical criteria for attaining a place on the sergeant's promotional list are largely subjective, thus conferring wide discretion upon the decision-makers. *Cf. Indiana Family and Soc. Serv. Admin. v. Jones*, 691 N.E.2d 1354 (Ind.Ct.App.1998) (court determined that a child care provider had a property interest in a child care license in part because the license issuance statute is almost wholly objective, leaving very little discretion to the issuing agency). They are, therefore, subjective in nature and cannot be viewed as something to which the applicant is "entitled".

A candidate's selection as sergeant is by no means assured even after his or her name is placed on the list. Promotion is subject to a need to fill such a position, presumably through either attrition or expansion of the Sheriff's Department. This further indicates that attainment of the rank of sergeant is not something to which incoming members of the Sheriff's Department are entitled. Moreover, after two years, candidates are removed from the list and they must submit a new application and repeat the process from the beginning. Finally, even when promoted, the candidate's first year is a probationary period, during which the candidate is subject to demotion in the event his or her performance is deemed unsatisfactory.

In summary, in order to prevail on his constitutional claim that he had a protected property interest in having his name included on the sergeant's promotional list, Austin must show that he has a legitimate claim of entitlement to it. *See Speckman v. City of Indianapolis*, 540 N.E.2d 1189. That assessment turns largely upon the amount of discretion given to the Merit Board and the Sheriff's Department in determining whether an individual will be placed on the list. *See id.* The procedures and criteria set forth above for placement on the list are not the hallmarks of a position or status to which one is entitled after completion of certain enumerated objective criteria. In view of the considerable discretion conferred upon the decision-makers, Austin had no protectable property interest in placement on the sergeant's promotional list. *Cf. Nunez v. City of Los Angeles*, 147 F.3d 867 (9th Cir.1998) (a police officer does not have a constitutionally protected interest in promotion to a higher rank); *Kielczynski v. Village of LaGrange, Ill.*, 19 F.Supp.2d 877 (N.D.Ill. 1998) (the promotion from patrolman to sergeant was discretionary, therefore a patrolman had no vested right to a promotion so as to implicate constitutional due process protections). Therefore, the trial court correctly entered summary judgment against him.

Judgment affirmed.

BAKER, J., and ROBB, J., concur.