Louis AGUILERA, Appellant–
Petitioner,

v.

CITY OF EAST CHICAGO FIRE
CIVIL SERVICE COMMISSION,
Appellee–Respondent.

No. 45A05–0106–CV–270.

Court of Appeals of Indiana.

May 30, 2002.

**980**

Rick C. Gikas, Gikas & Sams, Merrillville, IN, Attorney for Appellant.

Anthony DeBonis, Jr., Smith & DeBonis, LLC, Highland, IN, Attorney for East Chicago Fire Civil Service Commission.

Michael W. Bosch, Bosch & Banasiak, Hammond, IN, Attorney Appellee/Intervenor.

## OPINION

MATHIAS, Judge.

Louis Aguilera ("Aguilera") appeals from the City of East Chicago Fire Civil Service Commission's ("the Commission") order, in which the Commission sustained Aguilera's discharge from the City of East Chicago Fire Department ("ECFD"), raising the following issues for our review:

I.   Whether the Commission's 1999 disciplinary action against Aguilera was brought in a timely fashion;

II.  Whether the East Chicago Ordinance is constitutional;

III. Whether the Commission acted in an arbitrary and capricious or otherwise illegal manner when it refused to expunge a 1998 drug test

from Aguilera's file and whether that refusal violated his Fourth Amendment and Fourteenth Amendment rights; and

IV. Whether the Commission acted in an arbitrary and capricious or otherwise illegal manner in upholding Aguilera's dismissal from the ECFD based in part upon the aforementioned 1998 drug test.

We affirm.

## Facts and Procedural History

The facts most favorable to the Commission's ruling reveal that at all relevant times Aguilera was a full-time, paid member of the ECFD, a member of the Firefighters Pension Fund, and subject to the Fire Civil Service Act of 1972 ("the Act"), which provides that no member of the service may be "removed, suspended, demoted or discharged except for cause, and only upon the written accusation of the appointing power, or any citizen or taxpayer, a written statement of which accusation in general terms shall be served upon the accused, and a duplicate filed

with the Commission." Appellant's App. p. 194.[1] In October of 1998, Aguilera, pursuant to City of East Chicago Ordinance No. 97–0005 ("the Ordinance"), section 9, was randomly tested for drugs.[2] On October 27, 1998 Aguilera received notice that his random drug test was positive for metabolites of cocaine, and pursuant to section 16 of the Ordinance, Aguilera was suspended.[3]

On October 30, 1998, and again on November 3, 1998, Aguilera filed a timely notice of appeal (known as *Aguilera I* ) with the Commission, and requested to participate in the Employee Assistance Program ("EAP") pursuant to section 16 of the Ordinance. Aguilera's EAP request was granted, and he began a rehabilitation program under the supervision of a substance abuse professional. Aguilera was allowed to return to work while he completed the program. The Commission scheduled Aguilera's appeal hearing for December 8, 1998, but the Commission failed to adequately notify Aguilera pursuant to section 29 of the Ordinance.[4]

---

1. The Fire Civil Service Act of 1972, formerly Indiana Code section 19–1–37.5–1, et seq., was repealed in 1981. However, the Indiana General Assembly provided that a city could retain the merit system it had in place for its fire department under the 1972 Act by ordinance of the City's legislative body enacted before January 1, 1983. The provision required that the ordinance incorporate all of the provisions of the prior 1972 statute. Accordingly, the East Chicago City Council, through Ordinance No. 3339, retained the Fire Civil Service Act of 1972 in effect for the City of East Chicago. Br. of Appellee City of East Chicago at 4.

2. Section 9 of the Ordinance establishes that all persons employed by the government as firefighters, including officers, supervisors, and civilian employees having responsibilities relating to firefighting activities, are required to undergo random drug and alcohol testing in the manner specified by the Ordinance. Appellant's App. p. 184.

3. Section 16 of the Ordinance provides that

[a]n employee who has a verified positive test result or who refuses to undergo testing shall be immediately terminated from employment. Such termination shall not be imposed on an employee who requests and agrees to participate in an Employee Assistance Program (EAP), including evaluation and rehabilitation and who agrees to follow-up testing as required by Section 13 of this ordinance.
Appellant's App. p. 89.

4. Section 29 of the Ordinance provides in pertinent part:

[t]he Fire Civil Service Commission shall deliver written notice of the hearing to the employee in person or by a certified letter sent to his or her last and usual place of residence. Said notice shall be delivered to the employee within thirty (30) days of receipt of written request for hearing. The notice must state: 1. The time and place of hearing; 2. The charges against the employee; 3. The specific conduct that comprises

As a result of the Commission's inadequate notification, Aguilera filed a motion to dismiss on December 28, 1998, requesting that the Commission dismiss the proceedings against him, restore all vacation or sick days used and/or any lost pay as a result of the proceedings, and that the drug test results be expunged from his record. On September 8, 1999, the Commission granted nearly all of Aguilera's requests. The Commission ordered all charges of misconduct from the October 1998 drug test dismissed with prejudice and further ordered the City to restore any and all lost wages, vacation time, or sick leave time lost as a result of its action with respect to the October 1998 drug test. Appellant's App. p. 79. Lastly, the Commission ordered that any reference to any suspension, attempt to discharge, or statement of misconduct appearing in Aguilera's employment record arising from the October 1998 drug test be expunged. *Id.* However, the Commission denied Aguilera's request to expunge or remove the test results themselves from his record. *Id.*

Meanwhile, on August 26, 1999, and while Aguilera's motion to dismiss in *Aguilera I* was still pending, Aguilera was summoned for a follow-up drug test pursuant to section 13 of the Ordinance.[5] On August 28, 1999, Aguilera again tested positive for metabolites of cocaine. On September 8, 1999, the same day the Commission dismissed *Aguilera I*, after reviewing and verifying the second drug test, Dr. Timothy W. Raykovich ("Dr. Raykovich") the ECFD Medical Review Officer, notified Fire Chief James Dawson ("Chief Dawson") of Aguilera's test results. The next day, September 9, 1999, Chief Dawson notified Aguilera in writing about the positive test results, and advised that he would conduct a hearing on September 10, 1999 regarding the charges. At the September 10, 1999 hearing, Chief Dawson found that Aguilera had violated the Ordinance for a second time and terminated Aguilera's employment.[6]

Aguilera filed another request for appeal (known as *Aguilera II* ) with the Commission, and another request for participation in the EAP. After proper notification to Aguilera, the Commission held an evidentiary appeal hearing in *Aguilera II* on November 22, 1999. On December 8, 1999, the Commission issued its Findings of Fact and Conclusions of Law. In its Findings and Conclusions, the Commission sustained Aguilera's discharge under the Ordinance, finding that Aguilera had twice obtained a positive result on a substance abuse test, the second after having completed a qualifying EAP or rehabilitation

the charges; 4. That the employee is entitled to be represented by Counsel; at the employees own expense; 5. That the employee is entitled to call and cross-examine witnesses; 6. That the employee is entitled to require the production of evidence. Appellant's App. p. 91.

5. Section 13 of the Ordinance states in pertinent part:

An employee who has been tested under any provision of this ordinance and is found to be positive and subsequently participated in an Employee Assistance Program and upon completion of such program is allowed to return to work shall be subject to follow up testing. Such follow up testing shall be on a random basis and shall be conducted a minimum of six times during the twelve month period immediately following his/her return to work. Appellant's App. p. 89.

6. According to Section 17 of the Ordinance, if an employee is found to have a positive test after completing participation in an EAP or rehabilitation program and returns to work, the employee "shall be immediately terminated and shall not be permitted to participate in the EAP or other treatment or rehabilitation program for this second offense. Such an employee so terminated shall not again be eligible for employment by the City of East Chicago." Appellant's App. p. 89.

program and returning to work. Appellant's App. pp. 189–90.

Aguilera sought judicial review of the Commission's findings, and after several preliminary motions, including motions for change of judge and a motion for change of venue, *Aguilera I* and *Aguilera II* were consolidated in the Lake Superior Court.[7] After conducting oral arguments on Aguilera's petition for judicial review, the trial court affirmed the Commission's ruling and Aguilera's petition was denied. Aguilera now appeals. Additional facts will be provided as necessary.

### Standard of Review

■ Our review is limited to the trial court's consideration of whether or not the Commission adhered to proper legal procedure, made findings based on substantial evidence, and violated any constitutional or statutory provisions in doing so. *City of Marion v. Alvarez*, 151 Ind.App. 133, 138, 277 N.E.2d 916, 918–19 (1972). As our supreme court has stated:

> "[O]n review of an administrative act or order where the court is said to hear the matter de novo, the burden is on the complainant to establish the invalidity of the administrative action and, in doing so, the trial court may not merely substitute its judgment for that of the administrative body. It may not interfere with the exercise of the discretionary authority of that body, unless it is made to appear that it acted in the exercise of that discretion *in an arbitrary, capricious, fraudulent, or otherwise illegal manner.*"

7. *Aguilera I* was originally filed in Lake Superior Court, Room 5, and was subsequently venued on a change of venue to Newton County. The cause was thereafter consolidated with Aguilera's second appeal. *Aguilera II* was originally filed in Lake Superior Court 3 and went through several changes of judge before consolidation with *Aguilera I*. Br. of Appellee/Intervenor at 2.

*Id.* at 138, 277 N.E.2d at 919 (quoting *City of Evansville v. Nelson*, 245 Ind. 430, 443, 199 N.E.2d 703, 710 (1964)) (emphasis added). Former Indiana Code section 19–1–37.5–7, which was maintained by the City of East Chicago under the authority of Indiana Code section 36–8–3.5–1(b)[8] and by city ordinance,[9] further defines our review process, and provides in relevant part:

> The circuit court shall thereupon proceed to hear and determine such appeal in a summary manner: Provided, however, that such hearing be confined to the determination of whether the judgment or order of removal, discharge, demotion or suspension made by the Commission, *was or was not made in good faith for cause,* and no appeal to such court shall be taken except upon such ground or grounds.

Former Ind.Code § 19–1–37.5–7 (emphasis added).

### Discussion and Decision

#### I. Timeliness

■ We must first address Aguilera's claim that the Commission's 1999 charges against him, *Aguilera II*, were not timely filed. Aguilera argues that pursuant to Commission Rule entitled, "Time Limitation on Charges," adopted in 1983, all *Aguilera II* charges must have been brought within four days of his alleged violation, and because Aguilera was not charged accordingly, his dismissal was arbitrary and capricious. We disagree.

8. Indiana Code section 36–8–3.5–1(b) provides in relevant part:

> If a city had a merit system for its police or fire department under the former ... IC 19–1–37.5, it may retain that system by ordinance of the city legislative body passed before January 1, 1983.

9. Public Law 316–1981, § 1.

In pertinent part, the Time Limitation on Charges Rule reads:

> *Anyone bringing charges against another individual* shall put in writing the charge within four (4) calendar days of the possible violation and *shall deliver said charge to his superior officer.* The Assistant Chief or Acting Assistant Chief of that turn shall deliver the charge in a sealed envelope to the Administrative Office. In the event the Administrative Office is closed, the Assistant Chief or Acting Assistant Chief shall attach the sealed envelope to other documents pertaining to his turn.

Br. of Appellant at 36; Br. of Appellee City of East Chicago at 39. In its Findings of Fact and Conclusions of Law, the Commission found that,

> It is the Commission's conclusion that the 1983 regulation containing the four (4) day rule was intended to apply only to members of the Fire Civil Service who are preferring charges against other members. The use of the words in the regulation referring to a charging individual delivering the charge "to his superior officer" makes clear that the rule was adopted to require fire fighters to make charges against fellow fire fighters in a timely manner. Consequently, the MRO, in reporting a test result to the Department, cannot be said to be bound by this rule.
>
> Additionally, the medical review officer is not a member of the classified Fire Civil Service and cannot be deemed to be within the jurisdiction of the Commission's rule making power. Thus, the time for bringing the charge begins to run when the Fire Chief had actual notice of the positive test result. The evidence is without dispute that the Chief received notice of the test result, at the earliest, on September 8. He notified Aguilera on September 9, and discharged him on September 10. The four (4) day rule was satisfied.... The

Commission, therefore, concludes that the charges against Aguilera in 1999 were timely.

Appellant's App. p. 195.

The Commission's reasoning is explained well, and we cannot say that its decision "lacks a reasonably sound basis of evidentiary support." *City of Evansville,* 167 Ind.App. at 485, 339 N.E.2d at 572. We agree with the Commission's conclusion that the 1983 four-day Rule was not intended to apply to Dr. Raykovich. We, therefore, find that *Aguilera II* was brought in a timely manner.

## II. Constitutionality of the Ordinance

■ Before we address Aguilera's argument that the Commission violated his individual rights, we first must consider whether the Ordinance itself is constitutionally sound. In *Oman v. State,* 737 N.E.2d 1131 (Ind.2000), our supreme court upheld the constitutionality of a substantially similar drug ordinance. *Id.* at 1142.

In *Oman,* Ronald Oman ("Oman") was employed by Michigan City, Indiana, as a firefighter. As a condition of employment, Oman was required to submit to a urinalysis pursuant to Michigan City's Drug and Alcohol Free Workplace Ordinance ("the Michigan City Ordinance"). Under the Michigan City Ordinance, safety-sensitive employees, such as Oman, were required to submit to urine and breath tests for alcohol and drugs upon the occurrence of certain events, such as accidents. Refusal to submit to the test resulted in an automatic thirty-day suspension without pay and risk of termination.

In April 1998, Oman was the driver of one of two fire trucks involved in a collision. Pursuant to the Michigan City Ordinance, Oman was ordered to submit to a post-accident drug test. Oman's drug test was positive for marijuana. Without seeking leave of court, a deputy prosecutor

issued a subpoena directing the testing lab to produce Oman's test results. The lab complied, and Oman was subsequently charged with Operating a Vehicle with a Controlled Substance in his Blood, a Class C misdemeanor. Oman moved to suppress his test results, asserting that their use in his criminal prosecution violated his Fourth Amendment rights.

Reversing the court of appeals opinion, the *Oman* court relied on principles enunciated by the United States Supreme Court in *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) and *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989), which upheld the constitutionality of government testing programs very similar to the Michigan City Ordinance and the Ordinance here. *Oman*, 737 N.E.2d at 1142. Those landmark decisions relied on Fourth Amendment grounds and held that a urinalysis is a search within the purview of the Fourth Amendment, and must therefore meet the Fourth Amendment reasonableness requirement. *Skinner*, 489 U.S. at 616, 109 S.Ct. 1402; *Von Raab*, 489 U.S. at 665, 109 S.Ct. 1384. However, the *Von Raab* Court also stated that it is a "longstanding principle that neither a warrant nor probable cause, nor indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance." *Von Raab*, 489 U.S. at 665, 109 S.Ct. 1384; *see also Skinner*, 489 U.S. at 619, 109 S.Ct. 1402. "In certain limited circumstances, the Government's need to discover [latent or hidden illegal acts, conditions, or dangers], or to prevent their development, is sufficiently compelling to justify the intrusion on privacy entailed by conditioning such searches without any measure of individualized suspicion." *Von Raab*, 489 U.S. at 668, 109 S.Ct. 1384.

Relying on these holdings, the *Oman* court went on to find that departure from the usual warrant and probable cause requirements of the Fourth Amendment is justified when the affected employees are engaged in safety-sensitive tasks, and upheld the validity of the Michigan City Ordinance. *Oman*, 737 N.E.2d at 1142. For all of these reasons, we believe *Oman* controls in the instant case and that the ECFD drug testing program at issue is constitutionally sound.

### III. 1998 Records—Expungement

Aguilera argues that the Commission acted in an arbitrary and capricious manner and in violation of his Fourth Amendment rights against warrantless search and seizure and his Fourteenth Amendment due process rights when it utilized the *Aguilera I* substance abuse test as evidence in his *Aguilera II* termination. We disagree.

#### A. *Fourth Amendment*

■ Aguilera argues that his Fourth Amendment rights were violated by the Commission's requirement that Aguilera submit to mandatory follow-up testing and enrollment in the EAP as a condition of employment in *Aguilera I*, pursuant to section 17 of the Ordinance. Specifically, he argues that, "conditioning retention of a protected property interest in continued employment upon acceptance of an unconstitutional search is in itself a violation of Aguilera's due process rights and cannot be considered "voluntary" as that word is defined by Indiana law." Br. of Appellant at 32. We disagree, and find *Oman* to the contrary.

As previously noted, relying on the doctrine announced in *Skinner* and *Von Raab*, the *Oman* court found that departure from the usual warrant and probable cause requirements of the Fourth Amendment are justified when the affected employees, like

Aguilera, are engaged in safety-sensitive tasks. *Oman*, 737 N.E.2d at 1142. The *Oman* court also held that Oman had agreed to submit to post-accident testing as a condition of his employment in a safety-sensitive job. *Id.* at 1144. If Oman had objected to the testing, he had the option of seeking employment elsewhere. *Id.*

In like fashion, Aguilera voluntarily subjected himself to the testing procedures prescribed by the Ordinance when he accepted employment with the ECFD. If he had objected to the testing provision he could have refused employment and elected to work elsewhere. Also, after his *Aguilera I* test, Aguilera could have elected not to enter the EAP and its follow-up testing, but rather to challenge the results of his drug test on the merits. He did not do so. As such, Aguilera's Fourth Amendment rights were not violated by the Commission's mandatory follow-up testing.

### B. *Fourteenth Amendment*

Aguilera has a statutorily created property interest in his continued employment. *Howard v. Inc. Town of North Judson*, 661 N.E.2d 549, 553 (Ind.1996) (holding that a statute which required town to give police officer notice prior to termination gave officer property interest in continued employment); *Town of Speedway v. Harris*, 169 Ind.App. 100, 106, 346 N.E.2d 646, 649 (1976) (holding that a probationary fireman had a property interest in continued employment and was entitled to hearing prior to dismissal). As such, Aguilera's employment cannot be terminated without adherence to basic due process procedures. *Id.* Aguilera argues that his due process rights extend to preclude use of the *Aguilera I* drug test as evidence in the *Aguilera II* termination, and that the Commission's refusal to expunge the *Aguilera I* drug test violated his Fourteenth Amendment due process rights. Again, we disagree.

■ As previously indicated, the Commission's expungement decision must be examined under the "substantial evidence" and "arbitrary and capricious" standards. "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bailey Seed Farms, Inc. v. State Bd. of Tax Comm'rs*, 542 N.E.2d 1389, 1391 (Ind.Tax Ct.1989) (citations omitted). "A finding should be set aside under the substantial evidence standard when it lacks a reasonably sound basis of evidentiary support." *Id.* (citation omitted). "Similarly, an act is arbitrary or capricious when it is without some basis which would lead a reasonable and honest person to the same conclusion as the agency." *Id.* (citation omitted).

■ While the Federal Courts have held that expungement may be an appropriate remedy for due process violations, *Ware v. Heyne*, 575 F.2d 593, 596 (7th Cir.1978); *Feagin v. Broglin*, 693 F.Supp. 741, 746 (N.D.Ind.1988), *aff'd*, 885 F.2d 873 (7th Cir.1989) the inherent authority to expunge is a narrow one exercised only in extraordinary circumstances. *Feagin*, 693 F.Supp. at 746 (citing *United States v. McMains*, 540 F.2d 387, 390 (8th Cir. 1976); *United States v. Henderson*, 482 F.Supp. 234 (D.N.J.1979)). "Determination of the propriety of expungement involves a balancing of the harm caused to the plaintiff by the record's existence against the utility to the defendant of the record's maintenance." *Id.* (citations omitted). By its nature, expungement involves the exercise of discretion. While the procedure used to make the expungement decision is subject to Fourteenth Amendment due process review, the discretionary expungement decision is not.

■ Because we have determined that Aguilera had a property interest in his continued employment and therefore

must be afforded due process rights, we must now determine what process is due. It is a basic principle of due process that a deprivation of property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). However, these requirements "need not be elaborate." *Id.* at 545, 105 S.Ct. 1487. As the Court indicated:

> The essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Id.* at 546, 105 S.Ct. 1487 (internal citations omitted).

Based on the record before us on appeal, it is clear that Aguilera was afforded his full due process rights. Although negative consequences eventually befell Aguilera as a result of the *Aguilera I* positive drug test results, these negative consequences were not the result of the ECFD's failure to provide Aguilera with adequate notice during *Aguilera I* or a failure to afford Aguilera an opportunity to be heard. On September 8, 1999, the Commission hearing officer granted Aguilera's motion to dismiss because the ECFD had failed to provide adequate notice regarding *Aguilera I*. The Commission held that "no negative consequences can attach to Mr. Aguil-

era's terms of employment. Accordingly, reference to any suspension or specific charge of misconduct arising from the failed drug test should be stricken and expunged from his record." Appellant's App. p. 78. The Commission went on to restore all of Aguilera's lost wages, vacation time, or sick leave time as a result of the actions taken by the ECFD for Aguilera's 1998 drug test. All of these actions were consistent with ensuring compliance with Aguilera's due process rights. Nevertheless, the Commission denied Aguilera's request to expunge the *Aguilera I* drug test and test result from his record, holding that,

> [n]o objection has been made by anyone in these proceedings to the testing regime itself, to the manner in which Aguilera was chosen for the test or to the manner in which the test was carried out. It is only those proceedings subsequent to the test which are in issue and to which the order of expungement should apply.

*Id.* Aguilera, however, enjoyed full employment status following the Commission's ruling, with a full reversal of all consequences stemming from the disciplinary action that was dismissed due to the lack of adequate notice. *Id.*

Following his positive drug test in 1999, Aguilera was given a pretermination hearing before Chief Dawson, where he was afforded an opportunity to respond to the allegations against him, present evidence, challenge his *Aguilera I* drug test, and argue against termination. Following his pretermination hearing before Chief Dawson, Aguilera was afforded a full appeal hearing to further ensure that his due process rights were not violated. *See Hunt v. Shettle*, 452 N.E.2d 1045, 1051 (Ind.Ct.App.1983) (citations omitted) (holding that if there is a property interest requiring due process, it is not necessary

that a full evidentiary hearing be held at the outset as long as a hearing satisfying the requirements of procedural due process is held at some time after the initial taking). In light of this substantial evidence, we find that the Commission's refusal to expunge the *Aguilera I* drug test and test results from his employment record was not arbitrary, capricious, or otherwise illegal.

██ Aguilera further argues that because proper notice was a prerequisite to the Commission's jurisdiction, *Aguilera I* is a legal nullity, and the drug test upon which it was based should also be nullified. Br. of Appellant at 20. In support of his argument he relies on *Lipinski v. Town of Chesterton*, 151 Ind.App. 109, 280 N.E.2d 628 (1972) and *City of New Haven v. LeFever*, 143 Ind.App. 88, 238 N.E.2d 487 (1968). Aguilera's argument is misplaced. *Lipinski* and *LeFever* hold only that failure to strictly follow statutorily guaranteed due process procedures will render the disposition of a proceeding void. *Lipinski*, 151 Ind.App. at 117, 280 N.E.2d at 629; *LeFever*, 143 Ind.App. at 90, 238 N.E.2d at 489. Contrary to Aguilera's argument, *Lipinski* and *LeFever* do not stand for the proposition that failure to strictly follow notice procedures renders underlying evidence that served to initiate the proceeding void. The Commission dismissed *Aguilera I* based on inadequate notice. *Lipinski* and *LeFever* do not require the Commission to expunge the *Aguilera I* drug test results upon dismissal of the *Aguilera I* proceedings that were based upon those results. We do not find, therefore, that the refusal of the Commission to expunge the *Aguilera I* drug test from his employment file was arbitrary and capricious or otherwise illegal.

## IV. Dismissal

██ Finally, Aguilera argues that the Commission acted in an arbitrary and ca-

pricious or otherwise illegal manner in dismissing him as a firefighter from the ECFD because he was never found guilty of a violation of the drug policy by Chief Dawson in *Aguilera I*. Br. of Appellant at 33. However, Aguilera misconstrues the requirements of the Ordinance. According to section 17 of the Ordinance, "[a]ny employee who has completed participation in an EAP or rehabilitation program and returned to work and *has a second positive drug/alcohol test shall be immediately terminated* and shall not be permitted to participate in the EAP or other treatment or rehabilitation program for this second offense." Appellant's App. p. 89 (emphasis added). Clearly, a finding of guilty is not required for a dismissal to occur following a second positive test result, and the Commission correctly upheld Aguilera's dismissal based on his second positive drug test for cocaine in 1999. Under these facts and circumstances, the decision of the Commission was not arbitrary and capricious or otherwise illegal.

## Conclusion

Based on the foregoing we find that *Aguilera II* was timely filed. We further find that the ECFD's testing procedure is constitutional and that the Commission did not act in an arbitrary and capricious or otherwise illegal manner by refusing to expunge the *Aguilera I* test result in violation of his Fourth Amendment or Fourteenth Amendment rights. Finally, we find that the Commission correctly upheld Aguilera's dismissal based on his second drug test in 1999. The order of the Commission is therefore affirmed.

Affirmed.

RILEY, J., concurs.

BROOK, C.J., dissents with separate opinion.

BROOK, Chief Judge, dissenting.

I respectfully disagree with the majority's conclusion on the timeliness issue, which I believe to be dispositive. I would reverse the Commission's discharge of Aguilera on the basis that Dr. Raykovich did not report Aguilera's positive test result to the ECFD within four days of receiving the test result.[10]

"When asked to interpret an ordinance, this court will apply the same principles as those employed for the construction of statutes." *T.W. Thom Constr. v. City of Jeffersonville*, 721 N.E.2d 319, 324 (Ind.Ct. App.1999).

> The interpretation of a statute is a question of law reserved for the courts.... [W]hen the language is susceptible to more than one construction, we must construe the statute to determine the apparent legislative intent. The task of appellate courts with respect to statutory interpretation has been summarized as follows: We ascertain and implement legislative intent by giving effect to the ordinary and plain meaning of the language used in the statute. The statute is examined and interpreted as a whole and the language itself is scrutinized, including the grammatical structure of the clause or sentence at issue.

*State v. Rans*, 739 N.E.2d 164, 166 (Ind.Ct. App.2000), *trans. denied* (2001) (paragraph format altered and citations and quotation marks omitted). "[A]n agency's interpretation of the statutes and regulations which the agency is charged to enforce is entitled to some weight [but] if an agency's interpretation is erroneous, it is entitled to no weight." *Miller Brewing Co. v. Bartholomew County Beverage Co.*, 674 N.E.2d 193, 200 (Ind.Ct.App.1996) (citation omitted), *trans. denied* (1997). "Ultimately ... courts are charged with the responsibility of resolving questions of statutory interpretation and thus are not bound by an agency's interpretation of a statute or rule." *Id.*

Any citizen or taxpayer may bring charges against an ECFD employee. *See* EAST CHICAGO, IND., CODE ch. 2.22 (1982) (providing that no employee of the ECFD may be "removed, suspended, demoted or discharged except for cause, and only upon the written accusation of the appointing power, or *any citizen or taxpayer....*") (adopted December 30, 1982, by East Chicago Ordinance 3339; formerly Ind.Code § 19–1–37.5–7 (repealed 1981)) (emphasis added). Additionally, the Commission rule entitled "Time Limitation on Charges" provides in relevant part that "[a]nyone bringing charges against another individual shall put in writing the charge within four (4) calendar days of the possible violation and shall deliver said charge to his superior officer."

Adopting the reasoning of the Commission, the majority assumes that the "his" in "his superior officer" refers to the person bringing charges. In order to reconcile the rest of the rule with this assumption, the majority concludes that "anyone" refers only to ECFD employees. The effect of this interpretation, of course, is that the four-day rule does not apply to citizens and taxpayers.

As previously noted, the rule clearly applies to "[a]*nyone* bringing charges[.]" Given that citizens and taxpayers at large do not have superior officers, the only reasonable interpretation of "*his* superior

---

10. *See* EAST CHICAGO, IND., CODE ch. 2.64.160 (1997) ("An employee who has a verified positive test result or who refuses to undergo testing shall be terminated from employment. Such termination shall not be imposed on an employee who requests and agrees to participate in an employee assistance program (EAP), including evaluation and rehabilitation and who agrees to follow-up testing as required by Section 2.64.140 of this chapter.").

officer" is as a reference to the employee against whom the charges are being brought. My interpretation of the rule is that *anyone*, citizens and taxpayers at large included, who brings charges against an ECFD employee must do so within the four-day limit and must deliver the charges to the alleged violator's superior officer.

The majority's interpretation of the rule renders the four-day limit essentially meaningless. Under that interpretation, if an ECFD employee becomes aware of a violation but fails to report it within four days, the employee could simply recruit a citizen or taxpayer at large to report the alleged violation on the employee's behalf. That citizen or taxpayer would be able to report the alleged violation at any time. This is clearly an absurd and unacceptable result. Because Dr. Raykovich failed to report Aguilera's positive test result to Aguilera's superior officer within four days of receiving the result, I would reverse on that basis.