Calvin BANKHEAD, Appellant,

v.

Robert D. WALKER, Successor to Fire Chief Richard Gilliam; and the Gary Fire Civil Service Commission, Appellees.

No. 45A03–0506–CV–248.

Court of Appeals of Indiana.

May 9, 2006.

Frank R. Martinez, III, Highland, for Appellant.

R. Timothy Fletcher, Hodges & Davis, P.C., Shana D. Levinson, Levinson & Levinson, Merrillville, for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent, Calvin Bankhead (Bankhead), appeals the trial court's determination that disciplinary actions taken against him by Appellants–Petitioners, former Gary Fire Chief, Richard Gilliam (Chief Gilliam), and the Gary Fire Civil Service Commission (the Commission), were in good faith.

We affirm.[1]

### ISSUES

Bankhead raises two issues on appeal, which we restate as follows:

(1) Whether the trial court erred in affirming the Commission's decision to admit into evidence certain documents showing the results of Bankhead's random drug test at the Commission's hearing; and

(2) Whether the trial court erred in affirming the Commission's denial of Bankhead's Motion for Judgment on the Evidence.

### FACTS AND PROCEDURAL HISTORY

On November 26, 2001, pursuant to the policies and procedures of his employer, the City of Gary Fire Department (the Gary Fire Department) in Lake County, Indiana, Bankhead was selected at random and tested for controlled substance use. The results indicated that Bankhead, who had been employed by the Gary Fire Department for twenty-five years, tested positive for marijuana metabolites. Consequently, on November 29, 2001, Bankhead was suspended from duty without pay for violating Rule IV–4 of the Rules and Regulations of the Commission and the City of Gary Drug–Free Workplace Policy and Procedures. Thereafter, Chief Gilliam, Gary's Fire Chief at the time, filed a verified complaint with the Commission that alleged Bankhead had tested positive for marijuana use.

On February 13, 2002, the Commission held a hearing on the matter, where Chief Gilliam introduced into evidence a set of documents, labeled Group Exhibit No. 2, which included the results of Bankhead's drug test, as well as a certification intended to establish the chain of custody for Bankhead's urine sample that was used as the basis of the test. The documents within Group Exhibit No. 2 were admitted over Bankhead's objection. In addition, at the close of Gilliam's case, Bankhead moved for the Commission to make a judgment on the evidence, which the Commission denied.

On April 23, 2002, the Commission issued an Order that included Findings of Fact and Conclusions of Law. In its Order, the Commission found that Bankhead had violated the Rules and Regulations of the

---

1. We heard oral argument in this case on March 6, 2006 in the Court of Appeals court-room. We hereby commend counsel for their presentations.

Commission, as well as the Drug–Free Work Place Policy and Procedures of the City of Gary. As a result, the Commission suspended Bankhead for nine months and subjected him to additional random drug tests. The Commission also demoted Bankhead from the rank of Captain to that of Lieutenant, and prohibited him from taking any promotional exams for one year following the issuance of the Order.

Following the Order's issuance, Bankhead gave timely notice of his appeal. On December 9, 2004, a hearing was held before the trial court. At the close of the hearing, Bankhead filed a motion for Findings of Fact and Conclusions of Law under Ind. Trial Rule 52, which was granted. Subsequently, the trial court affirmed the Order of the Commission. In its findings, the trial court stated, in part:

13. [At the Commission's hearing], Bankhead's attorney objected to [Group Exhibit No. 2] on the grounds of hearsay and because the hospital record custodian's certification which was stapled to the top of the [ ] accompanying medical records did not fully comply with Ind.Code § 34–43–1–7.[ ].

14. [The Commission] examined both I.C. § 34–43–1–7 and the certification attached to Bankhead's records. [ ]. It also considered [the Commission's] Rules and Regulations Part IV, Rule IV–13, which enables [the Commission] to use a less stringent standard for the admission of evidence during Commission hearings.

(Appellant's App. p. 15).

Additionally, in its Conclusions and Rulings, the trial court stated:

1. The Certification that accompanied [Gilliam's] Group Exhibit No. 2 substantially complies with Indiana Evidence Rule 803(6).

2. The Certification that accompanied [Gilliam's] Group Exhibit No. 2 substan-

tially complies with Indiana Code § [ ]34–43–1–7.

3. Notwithstanding the fact that the certification authenticating the drug tests complied in large part with Indiana Evidence Rule 803(6), [the Commission] does operate under a less stringent standard for the admission of evidence.

4. [The Commission] reasonably found the drug tests received by [Gilliam] were inherently reliable and were properly admitted into evidence. Therefore, because [Gilliam's] Group Exhibit No. 2 was properly admitted into evidence by [the Commission], Bankhead's motion for Judgment on the Evidence was properly denied.

(Appellant's App. p. 16).

Bankhead now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION
### I. *Standard of Review*

■ Typically, in cases involving public employment hearings, our review is limited to the trial court's consideration of whether or not the Commission adhered to proper legal procedure, made findings based on substantial evidence, and violated any constitutional or statutory provisions in doing so. *See Aguilera v. City of East Chicago Fire Civil Service Com'n,* 768 N.E.2d 978 (Ind.Ct.App.2002), *reh'g denied, trans. denied.* However, here, because the trial court entered findings of fact and conclusions of law, we will review whether the evidence supports the findings and whether the findings support the judgment. *Lake County Trust Co. v. Jones,* 821 N.E.2d 1, 3 (Ind.Ct.App.2004), *reh'g denied.* In doing so, we will set aside the trial court's findings and conclusions only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* A judgment is clearly

erroneous when a review of the record leaves us with the firm conviction that a mistake has been made. *Id.* Upon such review, we neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.* at 3–4.

## II. *Admission of Certification and Drug Test Results*

■ First, Bankhead asserts that the Commission erred in admitting into evidence Group Exhibit No. 2, which contained a certification of his drug test results and the actual drug test results. Specifically, Bankhead contends that procedural due process required this set of documents to comport with I.C. § 34–43–1–7, which sets out the requirements for certifying hospital medical records in the absence of a personal appearance by a hospital employee. In the present case, no one from the hospital or the laboratory personally appeared at the Commission's hearing to verify the records admitted in Group Exhibit No. 2; thus, without a proper certification, Bankhead argues that Group Exhibit No. 2 was inadmissible hearsay.

Therefore, the crux of the issue here is what evidentiary standards the Commission was required to follow in conducting Bankhead's suspension hearing. First, we note that the Commission's Rules and Regulations, in relevant part, state the following regarding the suspension of an employee:

SECTION 7. *REMOVAL, DISCHARGE, SUSPENSION OR DEMOTION OF PERSONS IN CLASSIFIED SERVICE; PROCEDURES; APPEAL.* No person in the classified civil service who shall have been permanently appointed or inducted into civil service under provisions of this chapter shall be removed, suspended, demoted or discharged except for cause, and only upon the written accusation of the appointing power ... a written statement of which accusation, in general terms, shall be served upon the accused, and a duplicate filed with the [C]ommission ... Any person so removed, suspended, demoted or discharged may, within ten (10) days from the time of his removal, suspension, demotion or discharge, file with the [C]ommission a written demand for an investigation, whereupon the [C]ommission shall conduct such investigation. The investigation shall be confined to the determination of the question of whether such removal, suspension, demotion or discharge was or was not made for political or religious reasons, and was or was not made in good faith for [cause].

(Appellant's App. p. 95).

We also note, as referenced by the trial court in its findings in this case, that Rule IV–13 of the Commission's Rules and Regulations provides:

IV–13 *CONDUCT OF HEARING*

The hearing shall be conducted in an informal manner and without recourse to the technical common law rules of evidence required in judicial courts. The Commission shall as a matter of policy provide for exclusion of irrelevant, immaterial, or unduly repetitious evidence. Every person who is a party to such a proceeding shall have the right to submit relevant evidence in open hearing and shall have the right of cross examination.

(Appellee's App. p. 1). Despite this provision, Bankhead argues that he has a statutorily created property interest in his continued employment with the Gary Fire Department, and thus the Commission's less stringent standard for admitting evidence at its hearings is violative of his due process rights.

■ The Fourteenth Amendment of the United States Constitution prohibits any state from depriving a person of life, liberty, or property without due process of law. *Austin v. Vanderburgh County Sheriff Merit Com'n,* 761 N.E.2d 875, 879 (Ind. Ct.App.2002). The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Id.* The United States Supreme Court has defined constitutionally protected "property" in this context as "a legitimate claim of entitlement." *Id.* The source of such entitlements is not to be found in the Constitution, but generally arises from a statute, ordinance, or contract. *Id.* We have previously found that a property interest arises by an express or implied agreement with a governmental entity for continued employment. *See id.; see also Aguilera,* 768 N.E.2d at 986.

Accordingly, Bankhead contends that procedural due process required the Commission to follow I.C. § 34–43–1–7, which states in order to admit hospital records in the absence of a personal appearance by a hospital employee:

The hospital employee's certification of the hospital medical records under section 5 of this chapter must:

(1) be signed by the hospital employee with custody of the hospital medical records; and

(2) include:

(A) the full name of the patient;

(B) the patient's medical record number:

(C) the number of pages in the hospital medical record; and

(D) a statement in substantially the following form:

"The copies of records for which this certification is made are true and complete reproductions of the original or microfilmed hospital medical records that are housed in ＿＿＿ (name of hospital). The original records were made in the regular course of business, and it was the regular course of ＿＿＿ (name of hospital) to make the records at or near the time of the matter recorded. This certification is given under [I.C. § ] 34–43–1–5 by the custodian of the records instead of the custodian's personal appearance."

Here, the certification admitted into evidence at Bankhead's hearing did not contain any name or medical record number, but did state that the attached records were kept in the ordinary course of hospital business and made at or near the time of the occurrence of the matters set forth therein. However, two documents attached to the certification bear Bankhead's name and indicate a positive test result; furthermore, one of these two additional documents includes a patient identification number.

■ While we agree that Bankhead has a statutorily created property interest in his continued employment with the Gary Fire Department and that his employment cannot be terminated or suspended without adherence to basic due process procedures, we fail to find that the Commission's admission of Group Exhibit No. 2 violated this right. *See Aguilera,* 768 N.E.2d at 986; *See also Jones v. City of Gary, Ind.,* 57 F.3d 1435, 1440 (7th Cir. 1995). A basic principle of due process is that a deprivation of property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Aguilera,* 768 N.E.2d at 987. However, these requirements "need not be elaborate." *Id.* As the Supreme Court has stated:

The essential requirements of due process ... are notice and an opportunity

to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Id.* (quoting *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)).

Additionally, in a similar case disputing evidence admitted at a police merit board hearing, this court held that such employment proceedings "are administrative actions which allow for less formality than in civil proceedings before a court." *Sullivan v. City of Evansville*, 728 N.E.2d 182, 193 (Ind.Ct.App.2000). As such, we announced that we would "not disturb the [merit board's] decision for the lack of promulgated rules of evidence as long as the hearing was full and fair, before an impartial body and conducted in good faith." *Id.* at 193–94. Our state's supreme court has also stated, in relation to evidentiary matters at such hearings, that due process does not mandate full discovery rights. *Board of School Com'rs of City of Indianapolis v. Walpole*, 801 N.E.2d 622, 625 (Ind.2004).

We fail to find in the case before us that Bankhead's due process rights were violated. Rather, our review of the record indicates that Bankhead was given notice and an opportunity to respond to the Commission's accusation that he tested positive for marijuana use. Specifically, the Commission held a hearing where Bankhead had the opportunity to present his side of the

story. *See Aguilera*, 768 N.E.2d at 987. Further, the record shows no evidence that the hearing was not conducted in good faith before an impartial body. *See Sullivan*, 728 N.E.2d at 193–94. Accordingly, where a fair and full hearing was carried out, we decline to set any precedent that would require more formality in such employment proceedings. Moreover, as previously mentioned, our review of Group Exhibit No. 2 reveals two documents with Bankhead's name and evidence of a positive test result. Therefore, although the certification attached to those records does not include Bankhead's name, we find that Rule IV–13 of the Commission's Rules and Regulations specifically states that its hearings do not require adherence to the technical rules of evidence required in judicial courts. Therefore, we agree with the trial court that it was unnecessary for the Commission to follow I.C. § 34–43–1–7 in admitting the hospital records containing Bankhead's drug test results.

### III. *Motion for Judgment on the Evidence*

■ Additionally, Bankhead asserts that the Commission erred in denying his Motion for Judgment on the Evidence. Specifically, Bankhead contends that due to the unreliability of the documents in Group Exhibit No. 2, there was no substantial or credible evidence to support the conclusion that he actually tested positive for marijuana use. In particular, Bankhead disputes the sufficiency of the foundation laid for and the lack of an interpretation of his drug test results. Thus, in essence here, Bankhead offers an expansion of his original argument that the Commission failed to follow proper evidentiary procedures in introducing the results of his drug test.

In this argument, Bankhead points to Amendment No. 2001–3 of the Commission's Rules and Regulations, which states that "whenever an employee's urine sam-

ple tests positive for the presence of drugs or alcohol (1st test), the sample shall be subjected to a more scientifically accurate confirmatory test (2nd test)." (Appellant's App. p. 102). Bankhead subsequently argues that because Chief Gilliam, in his testimony at the hearing, could not verify that a second, confirmatory test had been performed, the Commission failed to follow its own procedure and therefore could not rightfully find that Bankhead tested positive for marijuana. However, in our review of Group Exhibit No. 2, we find a document, albeit a very poor copy, indicating an initial level of marijuana metabolites, and a confirmed level of marijuana metabolites. While there appears to be a discrepancy in the two figures, the end result indicates that the confirmed test level was "outside [the] reference range" for marijuana metabolites. (Appellant's App. p. 80). In addition, we note that Amendment No. 2001–3 further provides that "[i]f the confirmatory test (2nd test) is also positive, the donor shall be notified within a reasonable time." Thus, from this additional language of Amendment No. 2001–3, it can be inferred that the 2nd test is automatically performed by the hospital before any results are communicated to the donor employee.

 Under this argument, Bankhead also points to Chief Gilliam's inability to interpret the drug test results in his testimony at the hearing; as a result, Bankhead argues he was denied the opportunity to cross-examine the person responsible for performing the drug test. Consequently, Bankhead goes on to argue that the Commission should have introduced expert scientific testimony, by way of Ind. Rule of Evid. 702, to assist in its understanding of the numeric figures printed in the drug test results. Again, in light of the informal nature of public service employment proceedings, we decline to set a precedent requiring expert testimony at such hearings. Also, we note that Ind. Rule of Evid. 702 allows expert testimony if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence." Here, we find it unlikely that the Commission needed expert assistance in interpreting that the word "positive" preceded by the term "marijuana metabolites" indicates the presence of marijuana metabolites in Bankhead's blood stream. As repeatedly stated, it is not necessary that a full evidentiary hearing be held as long as the requirements of procedural due process, *i.e.* notice and an opportunity to be heard, are satisfied. *Aguilera,* 768 N.E.2d at 987–88. Therefore, we conclude that the trial court appropriately affirmed the Commission's decision to deny Bankhead's Motion for a Judgment on the Evidence.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not err in finding that Bankhead's drug test results were properly admitted at the Commission's hearing; in addition, we conclude that the trial court did not err in affirming the Commission's denial of Bankhead's Motion for Judgment on the Evidence.

Affirmed.

SHARPNACK, J., and BARNES, J., concur.